## The Young America.[1]

### Gallagher v. The Young America, etc.

*(District Court, S. D. New York. January 21, 1886.)*

1. Towage—Ice in Channel—Tug Forced to Shore—Stranding of Canal-Boat—Burden of Proof—Negligence.

   The tug Y. A. came from Perth Amboy to New York, around the southern shore of Staten island, towing a fleet of canal-boats, among which was libel-ant's boat, B. On coming through the lower bay she met a large field of ice, which forced her to the extreme westerly side of the channel, where the B. struck on a rock. *Held*, that the tug was liable only for want of care, under the circumstances that she met; that the burden of proof was on the libelant; and that, on the evidence, the stranding was not caused by the tug's negligence.

2. Same—Abandonment of Wreck—Subsequent Possession by Wreckers—Disputed Authority—Increased Damage—Independent Causes—Damages Divided.

   After the accident, the tug came on to New York with the remainder of the fleet, leaving no one in charge of the B. Aid being subsequently sent, the canal-boat was found in the possession of wreckers, and, owing to the disputed authority, and the difficulties and delays arising from it, she became almost a total loss. The evidence indicated that but from this interference the loss would have been greatly lessened. *Held*, that it was the tug's duty, having the custody of the canal-boat, to have made all necessary arrangements before leaving her to prevent her falling into the hands of third persons under color of authority. Not having done so, and it being impossible to determine with exactness how much of the whole loss was attributable to the original stranding, and how much to the subsequent want of protection, *held*, the damages should be divided.

In Admiralty.

*Hyland & Zabriskie*, for libelant.

*Wilcox, Adams & Macklin*, for claimants.

Brown, J. The libelant was the owner of the canal-boat Beakly, which was one of 24 boats forming a flotilla, composed of six tiers, of four boats in a tier, in tow of the steam-tug Young America, upon a hawser. The libelant's boat was the outer boat on the port side of the fourth tier. On the twelfth of February, 1885, the Young America started from Perth Amboy to tow the fleet to New York. Finding the Kills choked with ice, and impassable, she came through the lower bay, along the southern shore of Staten island. After passing between the Can and Spar buoys, about half a mile below the Narrows, she met, as her witnesses allege, a large field of ice coming up

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

from the bay with the flood-tide. By this ice, and the set of the flood-tide towards the Staten island shore, as they allege, the fleet was crowded to the extreme westerly side of the channel, so that the libelant's boat, when about opposite Fort Wadsworth, in the narrowest part of the strait, struck upon a rock, and subsequently became nearly a total loss. This libel was filed to recover the damages.

The witnesses for the libelant allege that there was little or no ice to obstruct the course of the tug. On their part it is claimed that the accident arose through the inexperience of the pilot, and his voluntary selection of the westerly shore; and that he ran upon the rocks because he mistook his proper course, and passed too near Fort Wadsworth. A number of witnesses on the part of the libelant state that there was no ice. It is also urged that the tide was no longer running flood at the time of the accident, which was after dark, and about 6:30 P. M. The evidence as to the precise time, however, is not so certain as to admit of any reliance upon the arguments founded upon a supposed change of the tide.

There is no evidence in the case of such circumstances existing at the time the fleet set out from Perth Amboy as would make the tug chargeable with negligence for starting out, and undertaking to bring up the tow. She is liable, therefore, only upon proof of want of suitable care and skill under the circumstances that she met. The burden of proof to show negligence is upon the libelant. I have carefully considered the testimony of the numerous witnesses in the case. I find it impossible to hold that the libelant makes out, by any preponderance of proof, that the course through the Narrows was free from ice. On the contrary, I must hold that the preponderance of proof is the other way, and that the tow was crowded in towards the shore, as the claimants' witnesses allege. Most of the witnesses for the libelant were not discharging any duties that required them to observe carefully as to the existence of ice; much less to navigate with reference to it. It was a cold night. They were going in and out of their cabins, and they were not in a situation that would naturally direct their attention specially to the conditions with which the tug had to contend. There was no ice on the port side, where the libelant was. What ice there was, was on the opposite side of the tow, some 60 feet distant from him, and it was dark. The evidence on the part of the witnesses for the tug is so minute and detailed that their story cannot be discredited, without assuming on their part gross fabrication and perjury. Their statements are also confirmed in some measure by the evidence from a steamer that went down the bay the same night, and encountered so much ice in the same place that she was obliged to put back. The fact that another tug a quarter of a mile or a half mile ahead escaped, is not inconsistent with the claimants' story. Their evidence shows that, during a period of from 20 minutes to half an hour, their powerful tug was pulling almost directly to the eastward away from the shore,

and that the helper tug went three times around the tow trying to break or loosen the ice. I cannot find any omission of duty or skill under the circumstances; and I must hold, therefore, that the tug is not answerable as for any negligence in causing the libelant's boat to strike upon the rock.

The evidence shows, however, that after she had struck and attempts had been made by the helper tug to pump her out, so that she might be towed away, she was left without any persons in charge; and that afterwards some persons upon the shore, claiming authority as wreckers, took possession of the boat, and prevented the claimants from again resuming possession and raising her, as they attempted to do, with a wrecking-boat sent down for that purpose; and that, in consequence of this disputed authority, and the difficulties and delays arising from it, the libelant's boat became a wreck. The evidence indicates pretty clearly that but for this interference the boat might have been raised, and the loss very greatly lessened. I think it was the claimants' duty, having the custody and charge of the libelant's boat, to have made all necessary arrangements before leaving her to prevent her from falling into the hands of third persons under color of authority. The libelant was not in charge of her, and he had no power to do anything for her protection. It was in the power of the claimants; and, as I have said, the boat was in their custody. They must be held answerable, therefore, for the great increase of the damages, through their fault, which contributed to the final loss. The nature of the case is such that it seems clearly impossible to determine with any approximation to exactness how much of the whole loss is attributable to the original stranding, and how much to the subsequent want of protection. The best that can be done under such circumstances is to divide the damages, as was done in the case of *Snow* v. *Carruth*, 1 Spr. 324; and see *The Shand*, 16 Fed. Rep. 570, 572–574; *The Max Morris*, 24 Fed. Rep. 860, 863.