## THE MUSSELCRAG.

(District Court, N. D. California. October 9, 1903.)

### No. 12,145.

1. SHIPPING—DAMAGE TO CARGO—CLAIM OF IMPROPER STOWAGE.

Where a ship during the voyage encountered storms of such violence as to reasonably account for the opening of her deck seams and the consequent damage to her cargo from water, the burden of proof rests upon the cargo owner to establish a claim made by him that improper stowage of the cargo caused or contributed to the strain on the vessel's deck and the resulting injury thereto.

2. SAME—CARE REQUIRED IN STOWAGE.

A ship is bound to the exercise of reasonable care and skill only in the stowage of cargo, and to render her liable for damage to cargo on the ground that she was unseaworthy by reason of improper stowage it must be shown that the manner of stowage was such as would not have been approved at the time by a stevedore or master of ordinary skill and judgment, knowing the voyage to be made and the weather and sea conditions which the vessel might reasonably be expected to encounter.

3. SAME—NEGLIGENT FAILURE TO PROTECT CARGO—HARTER ACT.

A ship bound from Antwerp to San Francisco with a cargo of cement encountered such rough weather in attempting to round Cape Horn, and was subjected to such strain, that her deck seams opened and a part of the cargo was damaged by water. She finally abandoned the attempt, and completed the voyage by way of Cape Good Hope and Australia. When she changed her course she was within 60 miles of the Falkland

¶ 1. Statutory exemption of shipowners from liability, see note to Nord-Deutscher Lloyd v. Insurance Co., 49 C. C. A. 11.

Islands, but did not put in for repairs, and before she reached Australia the cargo suffered further damage by reason of the open seams. *Held*, that the failure of the master to seek a port and repair the deck before starting back was not a fault or error in navigation or in the management of the vessel, within section 3 of the Harter act, but simply a failure to use proper care for the protection of the cargo, which rendered the ship liable for the resulting damage.

4. SAME—MEASURE OF DAMAGES—DAMAGE RESULTING ONLY IN PART FROM FAULT OF SHIP.

Where it appears that the greater part of the damage to a cargo resulted from sea perils for which the ship is not liable, but further damage occurred through the negligence of the master in failing to put into port to make repairs, it would be inequitable to hold the ship liable for the entire damage, although it cannot be separated, and the loss should be divided.

In Admiralty. Action to recover for damage to cargo

Nathan H. Frank, for libelant.

Page, McCutchen, Harding & Knight, for respondent.

DE HAVEN, District Judge. This libel was filed against the ship Musselcrag to recover for alleged damage to a cargo of cement, shipped on that vessel at Antwerp for carriage to the port of San Francisco. The cargo consisted of 3,278 tons of cement, and of this 2,350 tons were stowed in the lower hold and 928 tons between-decks. The cement was damaged by reason of water, which came through the seams of the deck, and it is claimed by the libelant that the opening of the seams and the consequent damage to the cargo was the result either in whole or in part of improper stowage, in this, that the cargo was not properly distributed, that too much weight was placed in the lower hold, which made the ship so stiff that she would not roll easily, and caused her in a rough sea to right herself quickly with a jerk or sudden lurch, the effect of which was to place so great a strain upon the deck that its seams were opened. In short, the contention of the libelant is that the ship was rendered unseaworthy by the improper manner in which her cargo was laden. When she left Antwerp the vessel was sound in hull and properly equipped, and the evidence shows that in attempting to round Cape Horn she met with storms of extraordinary severity and of several days' duration, during which she labored and strained to such an extent that the seams in her deck were opened and the deck almost continuously flooded with water, making it necessary, in the judgment of the master, to raise some of the cargo from the lower hold and stow it between-decks, in order to ease the ship; and about two weeks after this was done 50 tons of cement were taken from the lower hold and jettisoned. By reason of adverse winds and the violence of the storms thus encountered, the ship was compelled to abandon the attempt to pass around Cape Horn, and she changed her course and came to San Francisco by way of the Cape of Good Hope and Australia.

By the terms of the bill of lading the ship was not to be responsible for any loss or damage which the cargo might sustain by reason of perils of the sea. The question of fact, therefore, to be decided, is whether the damage for which the libelant sues was occasioned by perils of the sea or by improper or negligent stowage, causing the

vessel to labor and strain more than she otherwise would have done, and thus contributing to the opening of the deck seams. Upon this question there is a decided conflict in the evidence. Upon the one side three witnesses, one a competent stevedore and two master mariners, gave it as their opinion that in its stowage the cargo was not properly distributed; that there were about 150 tons too much put into the lower hold; and that the effect of thus stowing a heavy, compact cargo, like that of cement, caused the ship to roll more heavily and increased the strain upon her decks. Upon the other hand, the master of the ship, a seaman of long experience, testified that the cargo was laden under his general supervision, and was in his judgment properly distributed; that the ship did not give evidence of unusual straining until the severe weather was encountered; and this evidence is corroborated by the second mate, and also finds some support in the testimony given by two of the stevedores who assisted in loading the ship.

It having been shown that the vessel encountered storms of such violence as to reasonably account for the opening of the seams in her decks and the consequent damage to her cargo, the burden of proof is upon the libelant to establish the fact of improper stowage, contributing to the strain upon the vessel's deck and the resulting injury thereto. The Neptune, 6 Blatchf. 193, Fed. Cas. No. 10,118; The Polynesia (D. C.) 30 Fed. 210; The Fern Holme (D. C.) 24 Fed. 502; The Burswell (D. C.) 13 Fed. 904; Clark v. Barnwell, 12 How. 280, 13 L. Ed. 985; Muddle v. Stride, 9 Carr. & Payne, 380. It is not deemed necessary to analyze the testimony, or to discuss the reasons which were given by the expert witnesses in support of the opinions expressed by them. It will be sufficient to say that, after careful consideration of all the evidence, I have reached the conclusion that it is not sufficient to establish the fact of improper stowage. Stowage, with a view to the proper trim of the vessel and the ease with which it will be able to carry its cargo when at sea, is a matter which calls for the judgment of those under whose supervision it is done. The carrier is only required to exercise reasonable care and skill in stowing cargo, and the mere fact that if it had been differently distributed the ship would have been more easy does not necessarily show that the cargo was negligently stowed, that is, stowed in such a manner as would not have been approved at the time by a stevedore or master of ordinary skill and judgment, knowing the voyage upon which the vessel was about to sail, and the weather and sea conditions which she might reasonably be expected to encounter. In order to establish such negligence as is claimed here, the disproportion between the amount stowed in the lower hold and that placed between-decks must be so great as to warrant the conclusion that reasonable judgment was not used in loading the vessel, and I am not satisfied from the evidence that such great disproportion existed in this case.

2. It is further claimed by the libelant that the ship is liable because of the failure of the master to repair her damage at the Falkland Islands, instead of proceeding to Australia with the decks in the condition in which they were when the attempt to round Cape Horn

was abandoned. The evidence certainly shows that the injury which the vessel's decks suffered before sailing for Australia was so severe as to render them unseaworthy with respect to the protection of the cargo, and during the voyage to Sydney the vessel encountered weather so rough that her decks were often filled with water, from which cause the cargo received additional damage. When the master of the Musselcrag started for Australia he was within 60 miles of the Falkland Islands, and it seems to me that in the then condition of the ship he ought, in the exercise of a reasonable judgment, to have sought that port for the purpose of making repairs, and in not doing so he failed to use that care for the protection of his cargo from further damage which was incumbent upon him. For this negligence and breach of the contract of affreightment the ship is liable. The Niagara v. Cordes, 21 How. 7, 16 L. Ed. 41. It is argued upon the part of the claimants that, assuming this action of the master to have been negligent, it was a fault or error in navigation or in the management of the vessel, for which the vessel is not responsible under section 3 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]); but this was not a fault or error in navigation or in the management of the vessel, but simply the failure of the master to use proper care for the protection of the cargo in his custody.

3. The question relating to the measure of damages is more difficult. It is certain that part, and probably the greater part, of the whole damage which the cargo sustained on the voyage between Antwerp and San Francisco, was occasioned by perils of the sea before the vessel changed her course at Cape Horn and sailed for Australia; but just how much damage was received by the cargo before such change of course, and how much was sustained between Cape Horn and Australia, cannot be separately stated from the evidence. The libelant insists that, because this separation cannot be made, the ship should be held responsible for the entire damage, as well that occasioned without its fault as that which was caused by the negligence of the master in not going to the Falkland Islands for repairs. There is some language used by Judge Hoffman in the case of Speyer v. The Mary Belle Roberts, 2 Sawy. 1, Fed. Cas. No. 13,240, cited by the libelants, which seems to support this proposition; but, in my opinion, the more equitable rule to be applied in this case is to divide the damages. Under this rule it is reasonably certain that the ship will be required to respond for all of the damage occasioned by its fault, and the libelant has no right to insist upon more than this. In the case of The Shand (D. C.) 16 Fed. 570, it was said:

"In the case of the Mary Belle Roberts, where the loss from sea peril, if any, was comparatively small, it was just to hold the carrier answerable for the whole, unless he could show how much was to be deducted on account of the minor cause as to which he might claim exemption. But, if the general circumstances of the case show that the loss has probably arisen as much from the act or cause attributable to the one party as from that attributable to the other, there would be no justice in imposing the whole loss upon one simply because he could not separate and distinguish the exact amount arising from his own fault, and the rule adopted by Sprague, J., is, in such a case, obviously the juster one."

The rule referred to in the above quotation was announced by Sprague, J., in Snow v. Carruth, 1 Spr. 324, Fed. Cas. No. 13,144, as follows:

"I am satisfied that the great loss in this case (above the necessary leakage) was partly attributable to the negligence of the carrier, and partly to the negligence or misfortune of the shipper or consignee, and that it is not practicable to ascertain for how much of the loss the one party or the other is in fact responsible. I am therefore obliged to adopt some arbitrary rule in determining the amount to be allowed the respondents. An analogy may be found in the rule adopted by courts of admiralty in cases of collision, when both parties are in fault. In such cases the aggregate amount of the damages is divided equally between the parties."

The case of The Young America (D. C.) 26 Fed. 174, is precisely in point. The Young America was a tug, and a canal boat which it had in tow was stranded, and after having been abandoned by the tug became almost a total loss. The tug was sued by the owner of the canal boat for the damages thence resulting. The court found that the stranding was not caused by the tug's negligence, but that the tug was in fault in leaving the canal boat without any one in charge of it, and that by reason of such abandonment the damage to the canal boat had been increased. It was held that the damages should be divided, the court saying:

"The nature of the case is such that it seems clearly impossible to determine with any approximation to exactness how much of the whole loss is attributable to the original stranding, and how much to the subsequent want of protection. The best that can be done under such circumstances is to divide the damages, as was done in the case of Snow v. Carruth, 1 Spr. 324, Fed. Cas. No. 13,144."

It is not deemed necessary to further discuss the questions arising in this case. My conclusion is that the libelant is not entitled to recover for the cargo which was jettisoned, but is entitled to recover one-half of the damage sustained by the remaining cargo, with interest from the date of the filing of the libel and costs of suit, and the case will be referred for the purpose of ascertaining and reporting such damages. Let such a decree be entered.