M. A. HINTON and Another v. EASTERN RAILWAY COMPANY OF MINNESOTA.

May 23, 1898.

Nos. 11,036—(98).

**Bill of Lading—Exception—Burden of Proof—Negligence.**
    *Held* (following Shea v. Minneapolis, St. P. & S. S. M. Ry. Co., 63 Minn. 228), that the burden of proof is upon a common carrier, who claims that by reason of an exception in the bill of lading he is not liable for the loss sued for, to show, not only that the cause of the loss was within the exception, but also that there was no negligence on his part.

**Carrier—Injury to Merchandise—Due Care—Charge to Jury.**
    This was an action against a carrier for damages for injury to merchandise while in its possession. *Held*, that the trial court rightly re-

fused to instruct the jury that the measure of the defendant's duty was that which it was usual and customary for other carriers to do under like circumstances.

## Same—Verdict—Damages not Excessive.

Evidence considered, and *held*, that it sustains the verdict, and that the damages awarded are not excessive.

Appeal by defendant from an order of the district court for Hennepin county, Jamison, J., denying an alternative motion for judgment notwithstanding a verdict for $6,600 or for a new trial. Affirmed.

*W. E. Dodge,* for appellant.

The rule that common carriers are bound to carry and deliver goods safely as against all losses except those occasioned by the act of God or the public enemies does not render them liable for goods that perish or are deteriorated by reason of their own inherent liability to decay or to injury from heat and cold. 2 Rorer, R. 1245; Swetland v. Boston, 102 Mass. 276; Vail v. Pacific, 63 Mo. 230; Ray, Neg. Imp. Duties (Freight) 309. There is no presumption that the negligence of the carrier co-operated with the cold to cause the injury, since the cold itself, without such co-operation, would cause it, and the parties evidently contemplated that it might cause it. Wolf v. American, 43 Mo. 421. It is only in cases where the fact of the injury raises a presumption of negligence, that the rule stated in Shea v. Minneapolis, St. P. & S. S. M. Ry. Co., 63 Minn. 228, is applicable. If it is more reasonable to believe, or as reasonable to believe, from circumstantial evidence, that the accident may have happened as the result of some other cause than that assigned, i. e. defendant's negligence, there can be no recovery, since the question must not be left to mere conjecture. Orth v. St. Paul, M. & M. Ry. Co., 47 Minn. 384; 1 Bailey, Mast. Liab. 503–508; Philadelphia v. Schertle, 97 Pa. St. 450.

*Stiles & Stiles,* for respondent.

START, C. J.

Action to recover damages which the plaintiffs claim to have sustained on account of the freezing of 6,600 barrels of apples

while they were in the possession of the defendant as a common carrier, as the result of its negligence. Verdict for the plaintiffs for $6,600. The defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict, or for a new trial.

1. The defendant's first claim is that neither the allegations of the complaint, nor the facts proven on the trial, show or tend to show that the injury to the apples was caused by its negligence. The complaint charges defendant's negligence in these words:

"Defendant failed and neglected to use reasonable and ordinary care in the handling and transportation of said apples as a common carrier, but, on the contrary, so negligently and carelessly conducted itself that, while said apples were in its custody as such common carrier, the same became frozen and thereby depreciated in value, to the damage and," etc.

This is a sufficient allegation of appellant's negligence. Clark v. Chicago, M. & St. P. Ry. Co., 28 Minn. 69, 9 N. W. 75; Keating v. Brown, 30 Minn. 9, 13 N. W. 909; Rolseth v. Smith, 38 Minn. 14, 35 N. W. 565.

The apples were delivered to the Rome, Watertown & Ogdensburg Railroad Company, at Hamlin, New York, to be carried over its line to Buffalo, thence by the Northern Steamship Company's line to West Superior, and thence over the defendant's railway to their destination, Minneapolis. These several lines constituted a continuous line from Hamlin to Minneapolis. Bills of lading were delivered to the plaintiffs as the shipments were made, which the trial court, in its instructions to the jury, held to have been made and accepted in consideration of a lower freight rate, and to contain a valid agreement to the effect that neither the initial nor any connecting carrier should be liable for loss or damage to the apples so shipped which was caused by changes in the weather, heat, frost, or decay, and that, in case of any claim for damages, it should be made in writing to the agent at the point of delivery, promptly, and within 30 days after the arrival and delivery of the property. The instruction was not excepted to by either party.

The plaintiffs offered ample evidence on the trial to establish the fact that the apples were properly packed and delivered to the

initial carrier in good condition, and that when they were delivered to the plaintiffs by the defendant at Minneapolis, the place of their destination, they were in a damaged condition, having been frozen in transit. The defendant claims that the fact so established did not shift the burden upon it, as the last carrier, to show that it was not negligent in the premises. Its claim in this respect is this:

"The loss having been brought within the terms of the exception, since it is alleged that the sole damage was caused by frost, it would seem to follow that proof of the mere fact of freezing does not raise the presumption of defendant's negligence, since the parties clearly contemplated that such loss might occur without negligence."

This precise point was directly involved, argued, and decided in the case of Shea v. Minneapolis, St. P. & S. S. M. Ry. Co., 63 Minn. 228, 65 N. W. 458, which was an action to recover for injury to a quantity of oranges by frost while in transit. The bills of lading in that case exempted the carrier from liability for 'damage by frost or heat, and this court held that it was not sufficient for the carrier to show that the loss was within the terms of the exception, but it must also show that there was on its part no negligence in the premises. Upon principle and authority, the Shea case was correctly decided, and we adhere to it.

It is further claimed by defendant that it overcame the presumption of negligence on its part by showing that the apples must have been frozen when they were delivered to it at West Superior, and that from the time it received them until they were delivered to the plaintiffs it did all that a prudent and skillful carrier could have done under the circumstances to prevent the injury. There was evidence given on the trial tending to support this contention, but it was not conclusive; and, upon the whole evidence, our conclusion is that the question of the defendant's negligence was one of fact for the jury, and that the verdict is sustained by the evidence.

2. The defendant assigns as error the rulings of the trial court in admitting evidence tending to show that the defendant's Minneapolis agent solicited the shipment of the apples over its and the other connecting lines, and that he was advised when the ship-

ments would commence, and, approximately, of the number of car loads. This evidence was proper in rebuttal, as the defendant gave evidence tending to show that its agent at West Superior had no notice of the shipment until within 48 hours of the arrival there of a cargo of 24 car loads of the apples on a steamer, and that the defendant had only a limited time in which to prepare to receive, care for, and transport such an unusually large shipment of apples at that season of the year, the time being November 29, and the weather very cold.

The plaintiffs were also permitted, over the objections of the defendant, to give evidence tending to show that the freight rate actually agreed upon by the parties was less than the rate actually charged. The purpose of this evidence was to show that there was no consideration for the contract in the bills of lading for a limited liability, but the court expressly charged the jury that there was a consideration for such contract. Therefore the admission of the evidence was harmless error, if any.

3. The defendant further claims that written notice of plaintiffs' claim was not given to the agent at the point of delivery within 30 days after the delivery of the apples, as required by the bills of lading. The evidence shows that such notice was made and served upon Mr. Brann, the agent of the defendant at the point of delivery (Minneapolis), who was also agent for the Great Northern Railway Company at that point, and that the last named company actually made the delivery. The notice, however, was directed to Mr. Brann as agent of the Great Northern Railway Company, and to that company. The notice was a substantial compliance with the condition of the bills of lading.

4. The defendant requested, and the trial court refused to give, this instruction:

"You must necessarily, as jurors, determine the responsibility of individual conduct; but you cannot be allowed to set up a standard of conduct which shall, in effect, dictate the custom or control the business of the community. The measure of the defendant's duty is, what was it usual and customary for other carriers in this part of the country to do under similar circumstances?"

This was properly refused, for it assumes as a matter of law that,

if the defendant did in the premises what was usual and customary for other carriers to do, it was not guilty of negligence. Proof of the general custom of other carriers under like circumstances was competent, as tending to show that the defendant was not negligent; but such evidence was not conclusive, even if undisputed. O'Malley v. St. Paul, M. & M. Ry. Co., 43 Minn. 289, 45 N. W. 440; Flanders v. Chicago, St. P., M. & O. Ry. Co., 51 Minn. 193, 53 N. W. 544.

5. Lastly, the defendant claims that the damages awarded are excessive. The evidence on the part of the plaintiffs fairly tends to show that the apples, at the initial point of delivery, were of the value of one dollar per barrel, and that when they were received at Minneapolis the average value of the entire lot was less than the freight paid thereon by them, and that this depreciation in value was due to the fact that the apples had been frozen. This evidence sustains the finding of the jury that the damages were $6,600, or an average of one dollar per barrel.

Order affirmed.