CARL A. MEARS ET UX. *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, June Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action against a common carrier for a breach of duty at common law resulting in an injury to goods delivered to it for transportation, the plaintiff makes *prima facie* proof of negligence by showing that the goods were damaged while in the carrier's possession. If the carrier relies upon a special agreement limiting its liability, the burden rests upon it not only to prove the contract but also that the injury in question fell within its terms.

Terms of a shipping receipt, limiting the carrier's liability, as respects damage by wetting, are binding upon the owner, if accepted by him or his authorized agent, in consideration of a reduced rate of freight.

Such a paper is not only a receipt: it is also a special contract as to conditions of transportation; and if it purports to enure to the benefit of any connecting carrier who in fact receives the goods, it is effectual for that purpose.

A shipping receipt for " one piano, boxed, received in apparent good order (contents and condition of contents of packages unknown),"

does not raise any presumption, as matter of law, that the piano itself was in good condition when delivered.

If a shipper sues a carrier for damage to goods by wetting while in transit, mere proof of the wetting does not establish a conclusive presumption of negligence.

The receipt given to the carrier by the consignee, on delivery of the goods, is not conclusive upon him as to their condition: he may afterwards prove what their actual condition was.

Evidence that the consignee's drayman looked at the box after its arrival and made no complaint of its condition, is admissible on behalf of the carrier as tending to show that there was then nothing amiss.

What sort of care a piano-mover took on rainy days is not relevant to show what care he took on pleasant days; nor does proof of the care he generally took on rainy days legitimately tend to show the care he took on any particular day.

The records of the United States weather bureau kept at one place are admissible in evidence to show the state of the weather at a place only ten miles distant, where there is no such bureau, provided it appears from expert testimony that the conditions are usually the same.

As tending to prove the reasonableness of the conditions of the shipping receipt, evidence is admissible that the owner was offered two forms of contract at different risks and rates, and chose the one to which the receipt conformed.

Argued June 5th—decided July 18th, 1902.

ACTION for injury to goods received for transportation; brought to the Court of Common Pleas for New Haven County, and tried to the jury before *Hubbard, J.;* verdict and judgment for defendant, and appeal by the plaintiff. *Error and new trial ordered.*

The case is sufficiently stated in the opinion.

*George E. Beers*, with whom was *Harry W. Doolittle*, for the appellants (plaintiffs).

*George D. Watrous* and *Harry G. Day*, with whom was *John W. Edgerton*, for the appellee (defendant).

BALDWIN, J. The plaintiffs employed one McDonald, in Waltham, Massachusetts, to pack and box there a piano, and to make a contract with the Boston & Maine Railroad Com-

pany for its shipment to New Haven, Connecticut, at the most reasonable rate. McDonald, having packed and boxed it, delivered it to the railroad company on October 10th, taking a paper entitled a "shipping receipt," signed by the local freight agent, which described it as "1 piano, boxed," "received" "in apparent good order, except as noted (contents and condition of contents of packages unknown)." This paper contained the following provision: "It is mutually agreed, in consideration of the rate of freight to be paid for this service, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, shown or indorsed hereon (see rules and conditions on back hereof), and which are hereby agreed to by the shipper, and by him accepted for himself and his assigns as just and reasonable." One of the indorsed conditions was that "no carrier or party in possession" of the goods shipped should be liable for any damage thereto by wet.

On October 12th, the railroad company delivered the car containing the piano to the defendant at Northampton, Massachusetts, and on the next day the defendant sent the car on to New Haven, where it arrived before October 16th. As soon as the plaintiffs were apprised of its arrival, they employed an express company to cart the piano to their house. When received by them the box was wet without and within, and the piano badly injured by water. The express company had an agent at the freight depot, who had looked at the box, while stored there, and signed a "clear" receipt for it, making no complaint as to its condition.

The plaintiffs' complaint alleged a delivery of the piano by them at Northampton to the defendant as a common carrier to be transported to New Haven, and its injury by water while in transit, through the defendant's default. The answer denied any negligence, and set up the shipping receipt as being the contract of shipment. The reply denied the authority of McDonald to enter into any such contract.

The Court of Common Pleas instructed the jury that if they found his action to have been either authorized or ratified, then the shipping receipt was a valid contract between the parties to it, which exempted the defendant from liability for damage by wet not due to its own negligence nor to that of its servants, and the plaintiffs could not recover without showing by a fair preponderance of evidence that the wetting was due to such negligence.

In this there was error. If the special contract bound the plaintiffs, the defendant was nevertheless chargeable if, having received the piano dry, it delivered it to them wet, unless it could show affirmatively that the wetting occurred without its fault. A common carrier receiving goods for transportation under a special limitation of liability is a common carrier still. *Railroad Co.* v. *Lockwood*, 17 Wall. 357, 376.

The condition in the shipping receipt is to be read precisely as if it provided in terms, as it did in law, that no carrier on the route should be liable for any damage by wet not due to its own negligence nor to that of its servants. *Welch* v. *Boston & A. R. Co.*, 41 Conn. 333, 342. The complaint was for a breach of a common carrier's duty. The plaintiff in such an action, who shows that his goods were damaged, need not offer proof that the defendant was negligent. There was no claim that the injury was due to the act of God or to a public enemy. The plaintiffs denied what the defendant alleged in its answer, that there were special limitations of liability. If they proved that they shipped the piano dry and received it wet, they thus made out their case, unless the defendant could both show that there were such limitations in its favor, and that the wetting fell within them. To do this, it was bound to prove that the wetting occurred without its fault, and without its servants' fault.

As the plaintiffs' position in pleading is consistent throughout, there is no ground for a claim of variance, whether they were or were not bound by the terms of the shipping receipt which was set up by the defendant. *Coupland* v. *Housatonic R. Co.*, 61 Conn. 531, 540.

In view of the fact that the conditions which this receipt imposed were introduced and accepted in consideration of a less· charge for transportation than would otherwise have been made, the Court of Common Pleas did not err in instructing the jury that, if McDonald was authorized to assent to its terms, it bound the plaintiffs, and was a just and reasonable contract. That the defendant was not named in it, and the Boston & Maine Railroad Company might have forwarded the car over some other line, was immaterial. Whatever connecting carrier in fact received it from the first carrier was entitled to the benefit of its stipulations. Nor was there anything in the contention of the plaintiffs that the jury should have been told that this paper might have been given and received simply as a receipt, and, if so, its terms could not affect the defendant's liablity. It was both a receipt and a special contract as to the conditions of transportation.

The trial court committed no error in declining to charge the jury that, should they find the piano was injured by wet while in the possession of the defendant, they might infer therefrom that it was chargeable with negligence; and, instead of this, in instructing them that the fact, if found, that such an injury so occurred, should be given such weight as they might think it fairly entitled to in connection with all the other facts and circumstances bearing upon the case. It might have been exposed to rain by the sudden act of a casual trespasser. The jury had all the evidence before them and were to consider all. *Button* v. *Frink*, 51 Conn. 342, 347.

The plaintiffs' request for a charge that the shipping receipt raised a presumption that the piano was delivered at Waltham in good condition, was properly refused. Being boxed, the description of the goods received " as in apparent good order, except as noted (contents and condition of contents of packages unknown)," could only have referred to the condition of the exterior of the box.

There was error in the refusal to instruct the jury that the "clear" receipt, given by the express company at New Haven, was not conclusive, and that the plaintiffs could nevertheless show by other evidence that the piano was then wet

and damaged. Such a receipt by a consignee is a mere piece of evidence, and does not necessarily preclude him from afterwards proving what was really the fact.

The defendant was properly allowed to show that Morton, the express company's agent who receipted for the piano at New Haven in behalf of the plaintiffs, looked at the box (though from a position where he could not see all its sides) when it was pointed out to him by the defendant's delivery clerk, and made no complaint. If it was then wet, it would have been natural for one who was there to act for the plaintiffs, to remark upon it, and his silence was some evidence that he observed nothing amiss in its condition, and so that there was nothing amiss to be observed.

One Woods, a piano-mover employed by Morton, carted the box to the plaintiffs' house, and testified, in behalf of the plaintiffs, that the weather was clear at the time. Evidence having been given by them that it rained later on that day, he was asked what care he took in moving pianos on rainy days, the claim being that the jury might find that it rained while the piano was in his cart. This question was properly excluded. Care taken on rainy days did not show the care taken on fine days, nor did proof of the care he generally took on rainy days legitimately tend to show the care he actually took on any particular rainy day. *Laufer* v. *Bridgeport Traction Co.*, 68 Conn. 475.

Having first introduced expert testimony that the weather records kept by the United States weather bureau at any place would, as a general rule, be the true record for the surrounding country, the defendant was allowed to lay in the weather records so kept at Boston, on the day when the piano was shipped, as evidence of what the weather then was at Waltham, the place of shipment, which was ten miles distant. There was no weather bureau at Waltham, and none as near to it as that at Boston. The records were properly admitted. The objection of remoteness went simply to their weight.

The evidence introduced in defense, of the negotiations between the freight agent of the Boston & Maine Railroad Company at Waltham, and McDonald, leading up to his

acceptance of the shipping receipt, was plainly relevant. It showed that he was offered the choice of two modes of shipment, one called " owner's risk," at a rate named, and the other called " shipper's risk," at a higher rate, and chose the former, to which the receipt conformed. This bore directly upon the question whether the conditions imposed by that paper were just and reasonable.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.