MALLORY S. S. CO. v. HARRISS–IRBY COTTON CO. et al.   (No. 7563.)

(Court of Civil Appeals of Texas. Galveston. May 24, 1918.   Rehearing Denied June 27, 1918.)

1. SHIPPING ⊜=132(3)—DAMAGE TO GOODS—BURDEN OF PROOF.

Under the Harter Act, § 3 (U. S. Comp. St. 1916, § 8031), providing that if the owner has properly equipped, supplied, and manned a seaworthy vessel he shall not be liable for losses from certain causes, where cotton shipped in proper condition arrived in damaged condition, it devolved on the vessel owner to prove that the loss was occasioned by a cause enumerated in the statute.

2. SHIPPING ⊜=134—DAMAGE TO GOODS—EXEMPTION STATUTES—CONSTRUCTION.

The Harter Act, § 3 (U. S. Comp. St. 1916, § 8031), exempting vessel owners from liability for damage to goods in specified causes, where vessel is seaworthy, should be strictly construed and not extended to include exemptions not clearly within its scope.

3. SHIPPING ⊜=138 — DAMAGE TO GOODS — STATUTORY EXEMPTION — CARRIER'S NEGLIGENCE.

The Harter Act, § 3 (U. S. Comp. St. 1916, § 8031), exempting vessel owners from liability for damage to goods from specific causes, does not exempt a vessel owner from liability for loss due to his negligence, such as the negligent covering of a hatch.

4. SHIPPING ⊜=132(3) — DAMAGE TO GOODS — DAMAGE IN TRANSIT—BURDEN OF PROOF.

Where goods are delivered to a vessel in good condition and are damaged when delivered at destination, the carrier is liable in the absence of evidence showing such damage was not the result of its negligence, and the shipper is not required to show how the damage was caused.

5. SHIPPING ⊜=132(5)—DAMAGE TO GOODS—SEPARATION OF DAMAGED AND UNDAMAGED GOODS—EVIDENCE.

Evidence of the methods of separation of damaged from undamaged portions of a shipment of cotton and ascertainment of amounts thereof by weighing and estimating held not too uncertain and indefinite to sustain a finding of the number of pounds damaged.

Appeal from Harris County Court; W. E. Monteith, Judge.

Suit by the Harriss-Irby Cotton Company against the St. Louis & Southwestern Rail-

---

way Company, in which the Mallory Steamship Company was made a party defendant. Judgment for plaintiff against the railway company and in favor of the railway company against the steamship company, from which judgment the latter appeals. Affirmed.

R. W. Franklin, of Houston, for appellant. Wm. H. Wilson, of Houston, for appellee St. Louis & Southwestern Ry. Co. of Texas. Hutcheson & Bryan, of Houston, for appellee Harriss-Irby Cotton Co.

PLEASANTS, C. J. This suit was brought by appellee Harriss-Irby Cotton Company against appellee St. Louis & Southwestern Railway Company to recover the sum of $415.85 with legal interest thereon from January 14, 1915, alleged to be the amount of damage to 100 bales of cotton delivered to the defendant railway company at Greenville, Hunt county, Tex., for shipment and delivery to plaintiff's order at the city of New York. The petition alleges:

"That by the issuing of its bill of lading the defendant railway company contracted and undertook and was charged by law as a common carrier for hire, to transport the said cotton from Greenville, Tex., to New York, and there deliver the same in the sound and dry condition in which it was delivered to defendant, to shipper's order, notify Harriss-Irby Cotton Company, but that upon the receipt of said cotton in New York City same was in bad condition, part of said cotton being damaged apparently by water and other liquids, so that it became necessary to recondition the cotton at New York by removing from said 100 bales of cotton 3,340 pounds of damaged cotton, leaving a net weight of 46,516 pounds of undamaged cotton, to plaintiff's damage in the sum of $415.00."

The St. Louis & Southwestern Railway answered by a general demurrer and general denial, and alleged that it delivered said cotton to its connecting carrier in the exact and same amount, kind, condition, and quality as it received it, and that if any damage occurred the same occurred upon the line of the Mallory Steamship Company, and asked that the Mallory Steamship Company be made a party to the suit, and that, if any judgment be recovered against it, that it have judgment over against the Mallory line.

The Mallory Steamship Company answered by general demurrer and a general denial, and further alleged that, if the cotton became wet, it was due to the weather and dangers and perils of the sea, which liability was specifically excepted in paragraph 9 of the bill of lading, which provided there should be no liability in such cases. Mallory Steamship Company further alleged that, if said cotton was damaged, the damage was further and materially increased by reason of the negligence of the plaintiff in failing to recondition part of said cotton and holding the same in a wet condition for some 60 days after it was received; that it had used all due diligence to furnish a seaworthy vessel at the beginning of said voyage; and that said vessel was in all respects seaworthy

at the time of the commencement of said voyage; and specially pleaded the Harter Act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1916, §§ 8029–8035]).

The trial was had before a jury, which rendered a verdict upon special issues, and a motion was filed by all parties that judgment be entered in their favor; but the court overruled the motion of the Mallory line and entered judgment in favor of the cotton company against the railway company for the sum of $415.85 with 6 per cent. interest from January 14, 1914, and a judgment in favor of the railway company over against the Mallory line. This appeal from said judgment is presented only by the steamship company.

The bill of lading issued by the railway company for shipment is a through bill of lading for shipment from Greenville to New York. Section 9 of the bill of lading provides that the shipment is made subject "to the condition that no carrier or party in possession (of the cotton) shall be liable for any loss or damage resulting from the perils of the lake, sea, or other water."

The jury, in response to questions propounded by the charge of the court submitting special issues, found that the cotton was not damaged at the time it was delivered to the railway company at Greenville, and that 3,340 pounds of the cotton was damaged while in the possession of appellant steamship company, a connecting carrier of the railway. They further found that the steamship company at the commencement of the voyage had used due diligence to make the vessel seaworthy and to properly man, equip, and supply the same for the carriage of the shipment, but that said defendant steamship company "could have by the use of due diligence and care have kept said cotton from becoming damaged." There is sufficient evidence to support all of these findings.

We shall not discuss the assignments of error in detail, nor in the order in which they were presented in appellant's brief.

[1] Under an appropriate assignment, appellant complains of the refusal of the trial court to enter judgment in its favor upon the finding of the jury that appellant "at the time of the commencement of the voyage used due diligence to make the vessel in all respects seaworthy and properly manned, equipped, and supplied for the carriage of said shipment." In support of its contention under this assignment, appellant cites section 3 of the Act of Congress known as the Harter Act, Federal Statutes Annotated, vol. 4, p. 857. This statute is as follows:

"That if the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agents, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation, or in the management of said vessel, nor

shall the vessel, her owner or owners, charterers, agent or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God, or public enemies, or the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, or seizure under legal process, or for loss resulting from any act or omission of the shipper or owner of the goods, his agent or representative, or from saving or attempting to save life or property at sea, or from, any deviation in rendering such service."

The evidence in this case does not establish the fact that the damage to plaintiff's cotton resulted or arose from any of the causes mentioned in the statute. When the cotton was received by appellant from its connecting carrier, it was in good order and condition, and when it was delivered by the appellant to plaintiff at New York it was in the damaged condition found by the jury. Upon this state of the evidence, in order for appellant to relieve itself of liability under the statute above quoted, it devolved upon it to show that the damage was due to one of the causes specified in the statute. Mallory Steamship Co. v. Bahn Diamond & Optical Co., 154 S. W. 282. This it failed to do. It offered evidence to show that there was considerable stress of weather on the voyage. The entries in the log of the vessel on three of the days of the voyage are as follows:

"January 3d. Day opened with squally weather, and day ends with strong breeze and rough sea. January 4th. This day comes in with fresh northwest gale and heavy sea shipping much water fore and aft, eight a. m. wind and sea increasing, ship laboring heavily. January 5th. Day comes in cloudy with gale and rough sea."

[2, 3] It followed this evidence with the testimony of the first officer of the vessel to the effect that the ports, hatches, and bilges of the vessel were in good order and kept closed so that no water could get in the hold or on the cotton, and by the testimony of its agent at New York, who inspected the cotton when it was taken out of the ship at New York, and who testified that it did not then bear any visible evidence of being wet or damaged. We think the evidence as a whole fails to raise the issue of whether the cotton was damaged by faults or errors in navigation or in the management of the ship, or was due to the dangers of the sea or the act of God. There is no contention that any of the other exceptions mentioned in the statute are available as a defense in this case. If, however, there was evidence to show that the cotton was made wet and thereby damaged because the hatches were not properly covered during the stormy weather, the statute would not exempt appellant from liability for loss occasioned by such negligence. The statute should be strictly construed and not extended to include exemptions which

are not clearly within its scope. The Germanic, 124 Fed. 5, 59 C. C. A. 521; The Mississippi, 120 Fed. 1020, 56 C. C. A. 525. In the case last cited it is held that the statute does not relieve from liability when the loss is caused by leakage due to the negligent covering of a hatch. Other cases which sustain the rule of strict construction of the statute are: The Palmas, 108 Fed. 87, 47 C. C. A. 220; The Catania (D. C.) 107 Fed. 152; The Musselcrag (D. C.) 125 Fed. 786.

[4] Plaintiff was not required to show how the damage to the cotton was caused. When it is shown that goods are delivered to a carrier in good order and condition and are in a damaged condition when the carrier delivers them at destination, the carrier is held liable for such damage in the absence of evidence showing that the damage was not the result of its negligence. Hutchison on Carriers, par. 761; Ryan v. Railway Co., 65 Tex. 13, 57 Am. Rep. 589; Railway Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785; Railway Co. v. Bath, 90 S. W. 555.

The other assignments of error complain of each of the several findings of the jury on the ground that the finding is not supported by the evidence. We think the evidence sufficient to sustain each of the findings.

[5] After the cotton was delivered at its destination, it was reconditioned by the employés of the warehouse company in whose custody it was placed. This reconditioning consisted in separating the damaged from the undamaged portions. The bales were weighed, and after the damaged portions were removed were reweighed, and the number of pounds of damaged cotton thus ascertained. The records of the warehouse in which this cotton was reconditioned show that 3,340 pounds of the cotton was damaged. The witness who testified to this record stated that the weight of the pickings —that is, the damaged portions of the cotton that was picked from the bales—was 3,340 pounds. He also stated that, when different lots of cotton were reconditioned at the same time, it was impossible to keep the pickings separated with absolute accuracy, and they often had to approximate the number of pounds of pickings which came from the several lots of cotton.

We cannot agree with appellant that this evidence is too uncertain and indefinite to sustain a finding of the number of pounds of damaged cotton in appellee's shipment.

What we have said disposes of all the material questions presented by appellant's brief.

No error is pointed out which in our opinion requires or would justify a reversal of the judgment, and it has been affirmed.

Affirmed.