Argued February 14, reversed and remanded July 30, rehearing denied September 17, 1929.

PHILIP H. CARROLL *v.* THE ROYAL MAIL STEAM PACKET CO.

(279 Pac. 861.)

For appellant there was a brief over the name of *Messrs. Clark, Skulason & Clark,* with an oral argument by *Mr. A. E. Clark.*

For respondent there was a brief over the name of *Messrs. Wood, Montague & Matthiessen,* with an oral argument by *Mr. Erskine Wood.*

BELT, J.—Plaintiff seeks to recover for damages sustained by a cargo of apples through the alleged negligence of the defendant steamship company. The 1,687 boxes of apples in question were produced in the famous Hood River district and were shipped in February, 1923, on the "Highland Heather" for Southampton and Glasgow. Plaintiff alleges, in substance, that the apples were delivered to the carrier in prime, sound condition, but that through negligence of the company in the operation of its refrigeration plant, they arrived at ports of destination in a damaged condition. The specific charge of negligence is that defendant failed to use due diligence to provide and maintain suitable refrigerator compartments at proper temperature, ventilation, and humidity, so as to preserve and protect the apples from decay or deterioration while in transit.

The defendant denied that it was negligent or that plaintiff had sustained damage. It was affirmatively alleged that the apples were unsuitable for shipment and that if they arrived at destination in a damaged condition, it was due to their own inherent defect and unfitness.

As a second defense, it was alleged that at the time the apples were shipped it was discovered by some of the ship's officers that a portion of them was damaged and rotten, and, on account thereof, the defendant exacted from the plaintiff, in consideration of the issuance of clean bills of lading, the following letter of guaranty:

"February 7, 1923,
"North Pacific Coast Line,
 "Oregon-Pacific Company, Agents,
 "203 Wilcox Bldg.,
 "Portland, Ore.
"S.S. Highland Heather.
 "In consideration of your having issued clean Bills of Lading Nos. OP–520–521 and 522, covering Three thousand six hundred seventy four (3674) boxes of apples loaded on board the above steamer, certain boxes of which the steamer has taken exception to for the following reasons: Two (2) boxes recoopered, ship not responsible for decayed apples. I agree to save and hold harmless the steamer and/or owners and/or agents from any claim or consequence arising out of our not having placed the exceptions above noted, on the Bills of Lading issued to you.

 "PHILIP H. CARROLL,
 "(Signed) PHILIP H. CARROLL,
 "As Agents."

As a further defense, defendant asserts that whatever damage, if any, plaintiff sustained, the carrier is exempted from liability by reason of the following refrigerator clause made a part of the contract of shipment:

" * * the carrier shall not be liable for any loss or damage occasioned by the temperature, risks of refrigeration, accidents to or explosion, breakage, derangement or failure of any refrigerator plant or part thereof, unless shown to have been caused by negligence of the carrier from liability from which the carrier is not exempt under the provisions of the Harter Act or the Canadian Water Carriage of Goods Act."

There are two other affirmative defenses, but, in view of the questions presented on appeal, it is not deemed necessary to state them.

The trial court, at conclusion of the taking of testimony, directed the jury to return a verdict in favor of the defendant. From the judgment entered directing a dismissal of plaintiff's action, this appeal has been taken.

■ Does the record disclose a *prima facie* case, that is, one that ought to have been submitted to the jury? Unquestionably, there is evidence tending to show that the apples, when delivered to the carrier, were in good condition and properly packed for shipment. It was recited in the bills of lading that they were in "apparent good order and condition." This recital by the carrier is *prima facie* evidence that, as to all circumstances which were open to inspection, the apples were in good order. It did not preclude the carrier, however, from showing, in case of loss or damage, that such was due from a cause existing but not apparent at the time the apples were received for shipment: *Nelson* v. *Woodruff,* 66 U. S. 156 (17 L. Ed. 97); *The Aki Maru,* 255 Fed. 721; *Austin Nichols & Co.* v. *S. S. Isla de Panay,* 267 U. S. 260 (69 L. Ed. 603, 45 Sup. Ct. Rep. 269).

■ ■ Plaintiff, in response to the question, "What was the condition and quality of the apples that you had boxed for this shipment?" answered, "the fruit was first-class export Newtons in excellent condition, as far as I know. * * There was no evidence of decay or rot or other signs of deterioration." These apples were packed in October and were put in common storage at Hood River. It is argued by counsel for defendant that, although there is evidence as to the condition of the apples at Hood River, there is none relating to their condition at time of shipment. The declaration of the carrier as to the condition of the apples is, in itself, sufficient to warrant the sub-

mission of that phase of the case to the jury. However, an inspection of the fruit was made by officers of the ship and all boxes found to contain bruised or bad apples were rejected. It is reasonable to infer that those which passed inspection were in proper condition for shipment.

Defendant concedes that when the apples were unloaded a portion of them was in a decayed and damaged condition but asserts that this was due to inherent defects in the apples and not to improper refrigeration service. Mr. Carroll, in describing the condition of the apples at the time they were unloaded at Southampton, said about 20 per cent of the boxes were covered with green mold and that upon opening the boxes, the lining paper therein was found to be wet as were the paper wraps around each apple. He says that the apples showed signs of scald which, according to his opinion, was caused by improper ventilation and undue external moisture. Since the apples were put in a water-tight compartment it is urged that the only reasonable inference is that the moisture was the result of precipitation caused by pipes in the refrigerating compartments not being kept at a proper temperature. Mr. Carroll also testified that, in his opinion, if these apples had been properly refrigerated, they would have arrived in good condition. In the light of this evidence, we think a jury might reasonably infer that the damaged condition of the apples was due to the negligence of the carrier in failing to maintain proper refrigeration service. There is no evidence that the refrigerating plant was inadequate or unsuitable for the purpose for which it was intended. It is not necessary to establish negligence by direct evidence. It may be inferred from facts proven.

 Under the contract of shipment, a part of which was the refrigerator clause above quoted, the shipper agreed to relieve the carrier from liability resulting from certain specified causes, unless the damage sustained was due to the negligence of the carrier. That a carrier may thus contract to restrict its common-law liability is well established. It cannot, however, contract against its own negligence. In the instant case, the alleged damage, in our opinion, comes within one of the excepted causes, namely, that of "risks of refrigeration." This being true, was it incumbent upon the shipper—aside from offering evidence that the apples were in a good condition when delivered and were damaged upon arrival at destination—to show affirmatively that such damage was due to the negligence of the carrier? In other words, does the burden of proof relative to negligence in such cases rest upon the shipper or the carrier? Relative to this question, it is said in 10 C. J. 376:

"An issue may arise as to negligence and does arise where the carrier seeks to escape liability by reason of a common-law exception or one embodied in a valid contract. In this event there is a great conflict in the decisions on the question of burden of proof, and decisions even in the same jurisdiction are frequently conflicting. According to a large number of decisions if the carrier relies on such exception the burden rests on it, not only to show that the loss or injury falls within such exception, but also that it occurred without negligence on its part. * *

"On the other hand, an equally large number of decisions hold that, where the carrier shows the loss to be within an excepted cause, either at common law or under a valid contract exemption, it is not bound to go further and explain the particulars of the loss or injury for the purpose of showing that it was

free from negligence in connection therewith, but that the burden of proving negligence such as will render the carrier liable notwithstanding the common-law or contract exception, is on plaintiff * * ."

The United States Supreme Court has held that where a cargo damage is the result of one of the excepted causes in a bill of lading, the burden is upon the shipper to prove that the damage resulted from the carrier's negligence: *The Folmina*, 212 U. S. 354 (53 L. Ed. 546, 29 Sup. Ct. Rep. 363, 15 Ann. Cas. 748); *Clark* v. *Barnwell*, 12 How. 272 (13 L. Ed. 985). This rule is followed by many of the state courts. It is, however, strongly criticised in Jones' Commentaries on Evidence, Section 182, wherein the author says:

" * * when the *prima facie* case is established, the burden of evidence shifts to the carrier, who is to prove that the loss arose from some cause for which he is not liable * * the limitation of his proof, or rather of his exoneration, to excepted cases only makes the shifting of the burden idle for the excepted cases are really his affirmative defense."

In Greenleaf on Evidence (16 ed.), Section 220, it is said:

"And if the acceptance of the goods was special, the burden of proof is still on the carrier, to show, not only that the cause of the loss was within the terms of the exception, but also that there was on his part no negligence or want of due care."

Many courts which refuse to follow the federal rule base their opinion on the ground that in such cases the proof is generally in the hands of the common carrier,—that he or his servants know, or at least ought to know, the circumstances of the loss, while the shipper has no such knowledge, and, consequently,

if required to furnish proof of negligence it would practically operate as a denial of justice. In the instant case it would seem particularly unjust and unreasonable to place upon the plaintiff the burden of showing improper refrigeration service when the ship was a thousand miles at sea. It is far more reasonable to require the carrier who has exclusive charge and control of the cargo to show due diligence. It is not strictly accurate, however, to say that the burden of proof shifts, unless such words are used to express the idea that at a given stage of the trial it becomes the duty of a certain one of the parties to go forward with the evidence: *Hansen* v. *Oregon-Washington R. & N. Co.*, 97 Or. 190 (188 Pac. 963, 191 Pac. 655). Burden of proof is not to be confused with burden of evidence: Jones' Commentaries on Evidence, § 182. Plaintiff, having alleged the negligence of the carrier, is bound to prove such affirmative allegations. When, however, he establishes a *prima facie* case, the burden of proceeding with the evidence shifts to the carrier and it is incumbent upon it to account for its custody of the goods and to show that they were injured by some cause consistent with the exercise of ordinary care on its part. It is to be borne in mind that burden of proof is one thing and a *prima facie* case is another. As to whether defendant was negligent was, in our opinion, a question for the jury upon a consideration of all the facts: *Hinton* v. *Eastern Ry. Co.*, 72 Minn. 339 (75 N. W. 373); *Shea* v. *Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.*, 63 Minn. 228 (65 N. W. 458); *Chicago, St. Louis & New Orleans Ry. Co.* v. *Moss & Co.*, 60 Miss. 1003 (45 Am. Rep. 428, 21 Am. & Eng. R. Cas. 98); *Hinkle, Craig & Co.* v. *Southern Ry. Co.*, 126 N. C. 932 (36 S. E. 348, 78 Am. St. Rep. 685); *Brown* v. *Adams Express*

*Co.,* 15 W. Va. 812; *Adams Express Co.* v. *Stettaners,* 61 Ill. 184 (14 Am. Rep. 57); *Mallory S. S. Co.* v. *Harriss-Irby Cotton Co.* (Tex. Civ.), 204 S. W. 789; *Witting* v. *St. Louis & San Francisco R. Co.,* 101 Mo. 631 (14 S. W. 743, 20 Am. St. Rep. 636, 10 L. R. A. 602); *Crey* v. *Mobile Trade Co.,* 55 Ala. 387 (28 Am. Rep. 729); Michie on Carriers, § 1303. In a somewhat kindred case, *Rosenwald* v. *Oregon City Transp. Co.,* 84 Or. 15 (163 Pac. 831, 164 Pac. 189), Justice BURNETT said:

"In carrier cases under a contract like the one here involved it is incumbent upon the defendant to show that it was exercising proper diligence under all the circumstances and was free from fault, in order to avail itself of the stipulated exceptions to the common-law liability."

If it be said that under the particular terms of the bill of lading the shipper expressly agreed to assume the burden of showing the negligence of the carrier in addition to the *prima facie* case as above stated, we think it might well be regarded as contrary to public policy and, in effect, a stipulation purporting to relieve the carrier from liability for its own negligence. It ill behooves parties to contract in reference to procedure in court and rules of evidence. If it is against public policy to permit a common carrier to limit its common-law liability by contracting for exemption from the consequences of its own negligence, it would seem (*Hart* v. *Pennsylvania R. R. Co.,* 112 U. S. 331 (28 L. Ed. 717, 5 Sup. Ct. Rep. 151), equally inimical to the public welfare to permit the carrier by contract to make it impossible for the shipper to establish negligence.

If, in fact, the damaged condition of the apples was due to the negligence of the carrier, the letter of

guaranty did not relieve it from liability as it is precluded from contracting against its own negligence. On the other hand, if the apples when received for shipment were inherently defective and their condition at time of arrival at destination was by reason thereof, the defendant company would not be liable and the letter of guaranty would be superfluous. Plaintiff offered evidence tending to show that this letter referred to only two boxes of apples which were recoopered, and for which no claim was made.

The judgment of the lower court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED. REHEARING DENIED.

COSHOW, C. J., and BEAN, J., concur.

BROWN, J., absent.