THE IDEAL PLUMBING AND HEATING COMPANY *v.*
THE NEW YORK, NEW HAVEN AND
HARTFORD RAILROAD COMPANY

INGLIS, C. J., WYNNE, DALY, COMLEY and PHILLIPS, Js.

Argued June 11—decided July 24, 1956

*Thomas P. Hackett,* with whom, on the brief, was *Edwin H. Hall,* for the appellant (defendant).

*T. Holmes Bracken,* for the appellee (plaintiff).

INGLIS, C. J.  The trial court rendered judgment in this action for the plaintiff to recover from the defendant, a common carrier, for damage done to four large reinforced concrete pipes which had been shipped from Kennett Square, Pennsylvania, consigned to the plaintiff at Norwich, Connecticut. From the judgment the defendant has appealed. The only question raised on the appeal is whether the court erred in concluding that the pipes were injured in transit.

The following subordinate facts as found by the court are not in dispute.  The plaintiff bought six reinforced concrete pipes, each sixteen feet long and sixty inches in diameter, and eight rubber gaskets from the Lock Joint Pipe Company.  These pipes and gaskets were delivered by the seller to the Pennsylvania Railroad at Kennett Square on August 7, 1952, consigned to the plaintiff at Norwich, and were loaded aboard three Pennsylvania Railroad open freight cars.  The pipes were put on wooden cradles and were then strapped with steel and fastened to the floors of the cars.  They were braced with two by four or six by six timbers.  Two bills of lading were issued by the Pennsylvania Railroad, each of which contained the statement, "Received . . . the property described below, in apparent good order, except as noted (contents and condition of

contents of packages unknown) ...." No exceptions were noted. The cars were moved from the point of origin of the shipment to Norwich over the lines of the Pennsylvania Railroad and the defendant. When the shipment arrived at Norwich, four of the pipes were broken and damaged, and the supports holding them were also broken, as were the steel straps. The gaskets did not reach Norwich at all. The damage to the pipes was of such a nature that it rendered them unusable for the purpose for which the plaintiff had bought them and made them valueless.

On these facts the court concluded that the gaskets had been lost and the pipes damaged while in transit and that, therefore, the defendant, the terminal carrier, was liable. The defendant claims that there was no reasonable basis for the conclusion that the damage to the pipes was done while the shipment was in transit from Pennsylvania to Connecticut.

To fasten liability upon the defendant, the plaintiff had the burden of proving that the damage to the pipes was done while they were in transit. *Wells Laundry & Linen Supply Co.* v. *Acme Fast Freight, Inc.*, 138 Conn. 458, 461, 85 A.2d 907. Accordingly, it is manifest that if this conclusion was unwarranted the judgment for the plaintiff was erroneous. To meet its burden of proof, the plaintiff adopted the method, quite commonly used in cases like this, of offering evidence to prove that the pipes were in good condition when they were delivered to the initial carrier but were damaged when they arrived at their destination. The court found that when the pipes arrived at Norwich they were damaged, and this finding is not attacked. The attack on the conclusion that the pipes were damaged in transit is

based on the claim that the only finding concerning the condition of the pipes when they were loaded on the cars at Kennett Square was that the bills of lading contained the acknowledgment that the pipes were "in apparent good order." The defendant contends that this acknowledgment is not sufficient evidence to prove that the pipes were in good condition when they were received by the carrier.

The statement contained in the bills of lading was as binding on the defendant as it was on the initial carrier. *Cassone* v. *New York, N.H. & H.R. Co.,* 100 Conn. 262, 268, 123 A. 280. A statement by a common carrier in a bill of lading that the goods were received "in apparent good order" raises at least a rebuttable presumption that the goods were free from any damage which would have been visible on reasonable inspection. *Southern Ry. Co.* v. *Northwestern Fruit Exchange,* 210 Ala. 519, 524, 98 So. 382; *Goldberg* v. *New York, N.H. & H.R. Co.,* 130 Me. 96, 100, 153 A. 812; *Shepherd* v. *Naylor,* 71 Mass. (5 Gray) 591, 592; *Minneapolis Fire & Marine Ins. Co.* v. *Baltimore & O.R. Co.,* 237 Minn. 111, 115, 53 N.W.2d 828; *Jefferson Macaroni Co.* v. *Pennsylvania R. Co.,* 9 N.J. Misc. 405, 406, 154 A. 188, aff'd, 109 N.J.L. 266, 160 A. 635; *Sprotte* v. *Delaware, L. & W. R. Co.,* 90 N.J.L. 720, 721, 101 A. 518; *Schwalb* v. *Erie R. Co.,* 161 Misc. 743, 746, 293 N.Y.S. 842; *Beresin* v. *Pennsylvania R. Co.,* 116 Pa. Super. 291, 294, 176 A. 774; *Carroll* v. *Royal Mail Steam Packet Co.,* 130 Ore. 294, 298, 279 P. 861; note, 33 A.L.R.2d 867, 872; Van Doren, Law of Shipment, p. 737.

The law on this subject in this jurisdiction was first enunciated in *Mears* v. *New York, N.H. & H.R. Co.,* 75 Conn. 171, 175, 52 A. 610. In that case we held that the plaintiffs' request for a charge that the

shipping receipt raised a presumption that the piano which had been shipped was delivered to the carrier in good condition was properly refused. We pointed out that, the piano "[b]eing boxed, the description of the goods received 'as in apparent good order . . .' could only have referred to the condition of the exterior of the box." In *Shore* v. *New York, N.H. & H.R. Co.,* 99 Conn. 129, 133 121 A. 344, an action brought to recover for the loss of goods, described as a box of shirts, which had been delivered to the defendant for transportation, we quoted with approval the following from *Shepherd* v. *Naylor,* 71 Mass. (5 Gray) 591, 592: "In general, the interior condition of goods, packed as usual, and necessarily so, for shipping, cannot be known to the shipmaster receiving them for carriage, and therefore the words 'in good order and condition' must be limited to their apparently good order and external condition." Thus we recognized that a distinction is to be drawn between the effect of the acknowledgment of "apparent good order" as to goods in packages and its effect as to goods which are so open that any existent damage would be visible.

It is true that we said by way of dictum in *Wells Laundry & Linen Supply Co.* v. *Acme Fast Freight, Inc.,* 138 Conn. 458, 461, 85 A.2d 907, that the plaintiff's burden of proof as to the condition of goods on their delivery to the carrier "is not satisfied by the mere fact that the carrier has acknowledged, as it does in the standard bill of lading, that it has received the goods 'in apparent good order, except as noted (contents and condition of contents of packages unknown).' " That statement should have been qualified so as to make it plain that it applied only to goods which were so packed that any damage to

them existent at the time they were received by the carrier would not have been apparent upon inspection. It is settled by the *Mears* case and the *Shore* case, supra, that the law in this jurisdiction is in accord with the general rule that the acknowledgment by a carrier in the bill of lading that goods were received by it in apparent good order makes out a prima facie case to the effect that the goods when they were so received were undamaged in any way which would have been visible upon reasonable inspection.

In the present case, when the pipes reached Norwich the damage to them was apparent on the most cursory inspection. If that damage had been present when the bills of lading were made out, it would then have been apparent. It would have been visible because the pipes were not covered by any packaging but were open to view. It follows that when the Pennsylvania Railroad acknowledged receipt of them "in apparent good order," that established, prima facie, that they were in good order. There were no facts found which would rebut that prima facie case.

There is one other finding of subordinate fact which lends support to the questioned conclusion. That is the finding that upon the arrival of the pipes at Norwich the steel straps and wooden braces which had been used at Kennett Square to make them fast to the cars were broken. It is a fair inference that in order to cause those breaks the cars had been subjected to a severe jolting somewhere in transit and that the damage to the pipes had resulted from that jolting.

On the finding of subordinate facts, therefore, the trial court was amply warranted in concluding that the damage to the pipes had been sustained while

they were being transported by the two carriers and that, consequently, the defendant was liable.

There is no error.

In this opinion the other judges concurred.