# CASES DECIDED

## IN THE

# Supreme Court of Appeals

## OF VIRGINIA.

### Richmond.

### ADAMS EXPRESS CO. v. SCOTT.

#### January 18, 1912.

1. CARRIERS OF LIVE STOCK—*Self-Imposed Injuries—Contract Against Liability—Injuries from Fright.*—A carrier of live stock may lawfully stipulate with the owner thereof against liability for injury to animals occasioned by their inherent vices or natural propensities to injure themselves or each other, such as kicking, biting, and goring; and if an animal, in course of transportation, takes fright at the noise and smoke of passing trains in the usual conduct of business, and injures himself in consequence thereof, there is no liability upon the carrier, if he has provided all suitable means of transportation, ·and exercised that degree of care which the nature of the property, under the attending circumstances, requires.

2. CARRIERS OF LIVE STOCK—*Loading by Owner—Negligence—Injuries from Fright.*—Where a shipper has agreed to load and unload horses at his own risk, and is furnished with a car of his own selection, containing fourteen stalls for the shipment of ten horses, in one of which there is a radiator which is a permanent fixture and a necessary part of the outfit for the shipment of high-grade horses in cold weather, and one of the horses is unnecessarily placed by the shipper's care-taker in that stall, and, in consequence of fright from the usual and ordinary noise of trains, injures himself on the radiator, in the presence of a number of such care-takers, who had previously observed his fright, and consequent kicking and plunging, but made no effort to release him, there can be no recovery of the carrier.

Error to a judgment of the Circuit Court of Accomac county in an action of assumpsit, consolidated and heard with an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*W. R. Meredith* and *John S. Parsons*, for the plaintiff in error.

*Wescott & Turlington, Mapp & Mapp*, and *O. F. Mears*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The plaintiff in error, Adams Express Company, brings this writ of error to review a judgment for $1,213.70, recovered against it by the defendant in error, John L. Scott.

The litigation arose out of a written contract between the company and Daugherty, agent for the plaintiff, for the transportation of a race stallion, "Signet Prince," from Tasley, a station on the N. Y., P. & N. railroad, in Accomac county, Virginia, to Pocomoke City, in the State of Maryland, a distance of twenty-seven miles. Ten race-horses and traps were included in the shipment, all of which, with the exception of "Signet Prince," reached their destination in safety.

The contract, among other provisions, stipulated that the company should not be liable for the conduct or acts of the animals to themselves or to each other, "such as biting, kicking, goring, or smothering, nor for loss or damage arising from the condition of the animals themselves or which results from their nature or propensities, which risks are assumed by the shipper." The shipper, moreover, released the company from liability "for delay, injuries to or loss of said animals," unless caused by the negligence of its agents or employees. Also, upon the arrival of the animals at destination, the shipper agreed forthwith to receive them, paying the charges due thereon; in default whereof the company, as agent of the shipper, might have the animals put in a suitable place at his cost and risk. When the animals were

accompanied by the owner, or an attendant in his employ, as in the instant case, it was his duty to load and unload them at his own risk, the company furnishing necessary laborers to assist in the work, and to take care of them in transit, such care-takers to be transported upon the same car with the animals, free of charge.

That it is permissible for an express company to stipulate with the shipper for such limitations upon its liability in a contract for the carriage of live stock is well settled.

In 1 Hutchinson on Carriers (3d ed.), sec. 336, distinguishing between the liability of a carrier with respect to the transportation of live animals and ordinary goods, the learned author observes: "The liability of the common carrier of animals, it is said, is essentially different from that of the carrier of merchandise or of inanimate property. While common carriers are insurers of inanimate goods against all loss and damage, except such as is inevitable or caused by public enemies, they are not insurers of animals against injuries arising from their nature and propensities, and which could not be prevented by foresight, vigilance, and care. In the transportation of live stock, in the absence of negligence, the carrier is relieved from responsibility for such injuries as occur from or in consequence of the vitality of the freight. He does not absolutely warrant live freight against the consequences of its vitality. Animals may injure or destroy themselves or each other; they may die from fright or starvation, or they may die from heat or cold. In all cases, therefore, where injuries occur by reason of the inherent vices or natural propensities of the animals themselves, the carrier is relieved from responsibility if he can show that he has provided all suitable means of transportation, and exercised that degree of care which the nature of the property requires." Citing opinions of Pollock, C. B., and Martin, B., in *Pardington* v. *The Railway Co.*, 1 H. & N. 396; Erle, J., in *McManus* v. *The Railway*, 4 H. & N. 347; Parke, B., in *Carr* v. *Railway*, 7 Exch. 711.

The rule is thus stated in *Boehl* v. *Railway Co.*, 44 Minn. 191, 46 N. W. 333: "Carriers of live stock are liable as common carriers for damages or injuries thereto arising during the transportation, except such as, without the fault or negligence of the carrier,

result from the vitality of the freight—that is to say, the nature and propensity of animals to injure themselves or each other, their unruliness, fright, viciousness, kicking or goring, etc. The carrier is relieved from liability from such causes if he has provided suitable means of transportation, and exercised that degree of care which the nature of the property requires, or has not otherwise contributed to the injury. Of course, the carrier is relieved from special care and oversight of the animals when the owner or agent accompanies them for that purpose." *Norfolk, &c. R. Co.* v. *Reeves,* 97 Va. 288, 33 S. E. 606; *N. & W. Ry. Co.* v. *Sutherland,* 105 Va. 545, 54 S. E. 465.

These rules are said to obtain even where there is no special contract limiting the carrier's liability in respect to injuries resulting to animals from such causes.

Bearing in mind, then, these fundamental principles, let us briefly consider the alleged grounds of negligence and the evidence relied on to sustain the recovery.

First. It is alleged that the injuries sustained by "Signet Prince" were due to unnecessary delay in transportation. There is no evidence whatever to connect the animal's injuries with the alleged delay. Besides, it plainly appears that the delay was due to the refusal of Daugherty to accept freight movement. When told that his car-load of horses would be attached to an extra freight, used in transporting other horses, which was to leave about 10 o'clock A. M., he refused to allow his horses to be carried by that train, and demanded express shipment. Accordingly, in deference to his wishes, his car was taken up by the first express train that passed Tasley, and left that station about noon.

Second. It is said that during the delay at Tasley the company suffered the car "to be switched around, backward and forward, on the railroad track and switches, and jarred, jerked, and kicked up to and against other cars"; and, consequently, the horse became greatly excited and frightened, and hit his feet, legs, and body against the sides and back of the stall, and against a radiator installed therein, and was injured, etc.

It was shown that the movements of the car at Tasley complained of in this specification were all necessary movements in the ordinary course of railroading.

Third.  This allegation of negligence is germane to the second—namely, that the horse was frightened and injured by the puffing of smoke and noise from passing engines.  These acts were done, not wantonly, but in the customary manner, and were unavoidable in the operation of trains.

Fourth, and lastly.  It is charged that the company negligently failed to provide and maintain a safe car, stall, and appliances for the shipment of the animal.  Under this specification it is also alleged that the company negligently suffered a radiator to be in the stall in which "Signet Prince" was placed, which was uncovered, and against which he hit his feet and legs and injured himself.

The car in question was a Pennsylvania express car, in which Daugherty had shipped a load of horses from Cape Charles to Tasley a few days previously.  The car had, at that time, been stalled in accordance with his wishes, and at his special request was again furnished to him by the company for the shipment to Pocomoke City.

As observed, the shipment consisted of ten horses, and they were accompanied by nine attendants.  The car contained fourteen stalls.  The agreement required the shipper to load and unload the stock, the company furnishing necessary assistance, and "Signet Prince" was either the first or second horse loaded; so that there were twelve or thirteen stalls besides the one containing the radiator, in any one of which he might have been safely bestowed.  It was also shown that a radiator is a permanent fixture and necessary part of the outfit of a car used in shipping high-grade horses in cold weather.  But, in this instance, the shipper could have obviated all risk of injury to the animal from that source simply by placing him in, or removing him to, another stall (and three vacant stalls still remained after accommodating all the other horses), or by covering the radiator with a horse-blanket.  "Signet Prince" was, however, made fast in the stall with the radiator by ropes on either side of his head, tied to an iron bar above, extending across the car.  He became frightened, presumably from passing engines, before the car left Tasley, and, in his effort to escape, sustained some injury by kicking and plunging.  He kicked down a mail box from the side of the car, and

broke from their fastenings several half-inch iron bars that pro-tected the car window. His fright continued, and before the train reached its destination (just how long before does not appear) he forced the radiator from the side of the car and broke the re-gulator wheel from the valve, leaving exposed a half-inch copper tube of considerable length, and was finally discovered astride of the radiator, with the valve tube embedded in the inner side of his left thigh. The injuries thus inflicted were of a serious and permanent character. The attendants made no effort to release the animal from his perilous position, and the shipper refused to unload or receive him at Pocomoke City. The company there-upon placed him in the care of a suitable person, where he remained from August 8 to November 18, 1908, when he was delivered to the plaintiff on payment of charges for his care and keep.

There was also an effort to prove that the company negligently refused to unload the horse at Tasley and other stations after his car fright became manifest, or to side-track the car at Parksley; but the evidence on that subject was wholly unsatisfactory and insufficient. Indeed, Daugherty, the shipper and agent of the owner, seemed possessed of the erroneous idea that he was under no obligation whatever to care for the safety of the horse, but could stand idly by and suffer the animal to destroy himself, and hold the express company liable for the loss.

There are a number of other assignments of error in the petition for a writ of error, but the court is of the opinion that the failure of the shipper to make out a case of actionable negligence against the express company is controlling, and it is therefore unneces-sary to notice subordinate assignments. The injury to "Signet Prince" was due to no fault of the defendant, but was traceable rather to the inherent vice or propensity of the animal itself, coupled with the culpable negligence of the agents of the shipper, to whom its safety had been confided.

For these reasons the judgment must be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed.*