## Domenico Cassone *vs.* The New York, New Haven and Hartford Railroad Company.

Third Judicial District, Bridgeport, October Term, 1923.
Wheeler, C. J., Beach, Curtis, Keeler and Wolfe, Js.

In an interstate shipment of goods, the bill of lading which is required
to be issued by the initial carrier governs the entire transportation
and fixes the obligation of all participating carriers to the extent
that its terms are applicable and valid.

In a shipment of grapes from California to Connecticut, the bill of lad-
ing contained the statement on its face: "Dry car. Do not ice in
transit. Keep vents open to destination." The plaintiff claimed
that the defendant, the terminal carrier, was negligent in not icing
the car notwithstanding the provisions of the bill of lading. *Held*
that inasmuch as the bill of lading provided how the grapes should
be protected throughout their transportation, the contention of the
plaintiff must fail.

The plaintiff assigned error in the conclusion of the trial court that the
defendant had rebutted the common-law presumption that an in-
jury to goods in transit occurred on the lines of the last carrier.
*Held* that such conclusion was justified in view of the subordinate
facts found, including the nature of the goods, the condition of the
car when received by the defendant, the long period of transporta-
tion before such receipt and the brief period thereafter, and the
extent of decay in the grapes when the car was opened.

The common-law liability of a carrier as an insurer, does not extend to
certain classes of articles shipped, such as livestock, fruit, vege-
tables, or other articles whose loss or damage results from a defect
or vice inherent in the property.

The interstate bill of lading used in this shipment provided that the
carrier should not be liable for damage resulting from a defect or
vice in the property, unless it was negligent, respecting which it
assumed the burden of proof. *Held* that this changed the common-
law rule as to burden of proof, but that the prima facie case against
the carrier might be rebutted as had been done in the present in-
stance.

Argued October 31st, 1923—decided January 8th, 1924.

Action to recover damages for the alleged failure of
the defendant carrier to properly care for a carload of
grapes during its transportation, brought to and tried

by the Superior Court in Fairfield County, *Maltbie, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The finding discloses that on September 10th, 1920, the plaintiff, through its agent, delivered a carload of grapes in good condition in a car to the Central California Traction Company, a railroad company, at Curry, California, for transportation and delivery to the plaintiff at Stamford, Connecticut.

The car was of the refrigerator type. Such cars have doors on the sides which open outward of such a design that they have to be closed during transportation. In the roof were openings known as "vents and plugs," and in the floor others known as "drips."

The equipment of a refrigerator car provides only two methods of protecting a shipment of perishable goods by cooling it: (1) By refrigeration process, by placing ice in the bunkers, closing the vents and plugs and keeping the drips open; or (2) by the ventilation process, by keeping the vents, plugs and drips all open. These two methods were necessarily alternative.

At the time of this shipment the car used was an old one, unfit for the refrigeration process, but fit for the ventilation process, which process the shipper selected for this shipment.

At the time of the delivery of the car to the Traction Company, a bill of lading was issued, signed by it and the plaintiff's agent. This instrument was in the form of the Uniform Bill of Lading approved by the Interstate Commerce Commission. It recited upon its face, as a part of the printed form, the receipt of the grapes in question "in apparent good order, except as noted (contents and conditions of contents of packages unknown)"; and also that: "It is mutually agreed as to each carrier . . . and as to each party at any time interested in all or any of said property that every serv-

ice to be performed hereunder shall be subject to all conditions whether printed or written herein contained including conditions on the back hereof and which are agreed to by the shipper and accepted for himself and his assigns"; and it also had upon its face in writing the following: "Dry car. Do not ice in transit. Keep vents open to destination." Upon its back, among the conditions there printed, were the following: "Except in case of negligence of the carrier or party in possession (and the burden to prove freedom of such negligence shall be on the carrier or the party in possession), the carrier or party in possession shall not be liable for loss or damage . . . resulting from a defect or vice in the property. . . . No carrier is bound to transport the property by any particular train or vessel or in time for any particular market or otherwise than with reasonable despatch, unless by specific agreement endorsed hereon."

The grapes were packed in open lugs so that the contents could be easily seen if the car was opened, and were in good condition when shipped.

Shortly after the receipt of the car by the Traction Company, it issued a waybill which contained instructions to its trainmen and those of the various carriers over whose lines it was to be hauled, as to the route of the car and the protections to be given to the shipment. Under the printed heading "Instructions regarding icing, ventilation, etc.," was the endorsement: "Unfit for ice. Keep vents open to destination." This waybill accompanied the car throughout its trip.

The car was routed via the lines of the Traction Company, The Atchison, Topeka and Santa Fe to Ogden, Utah, the Chicago, Burlington & Quincy, and the Chicago, Minneapolis and St. Paul to Chicago, the New York, Lake Erie and Western to Maybrook, New York, the Central New England Railway to Danbury, Con-

necticut, and the defendant as terminal carrier to destination; and the car was transported pursuant to the said routing.

The car left the point of origin late in the day of September 10th, 1920, or on the next day. It arrived in Chicago on September 15th, and was there diverted to the International Brokerage Company and soon after, on the same day, rediverted to the plaintiff at Stamford. It arrived at Maybrook, New York, at 9:30 a. m. on September 28th. It left Maybrook at 12:30 p. m. on September 29th, and arrived at Stamford at 1:30 a. m. on the 30th, about two hours behind its schedule. No agreement as to the despatch with which this car was to be transported was endorsed upon the bill of lading, and it was transported by the defendant with all possible despatch from the time it came upon its lines at Danbury, sometime after 12:30 p. m. on September 29th, until its arrival at Stamford.

The car was inspected by the defendant as to its external condition upon delivery to it at Danbury, and it was likewise inspected upon its arrival at Stamford on September 30th; the doors were found at each time to be closed and sealed with a seal other than those used by the defendant, the vents, plugs and drips were found to be open, and at 9 and 10 a. m. at Stamford, the interior of the car was inspected and the bunkers were found to be dry and without ice. The methods adopted to ventilate the car were those usual in similar cases, and the agents of the defendant failed in no respect to take proper steps to that end. The defendant was not negligent in any of the ways specified in the complaint.

Upon inspection of the car at destination, the grapes were found to be in a badly decayed condition and the freight agent of the defendant at once placed ice in the bunkers of the car as an additional protection until the plaintiff could unload them.

The plaintiff paid the defendant for freight, and also suffered a large loss by reason of the fact that on delivery the grapes were so badly decayed as to be worthless.

*Frank Rich,* for the appellant (plaintiff).

*James W. Carpenter,* for the appellee (defendant).

CURTIS, J. The plaintiff alleges, as reasons of appeal, the refusal of the trial court to amend its finding as requested in his motion to correct and add to the finding. In so far as the motion requested changes in the wording of the finding as made, an examination of the record shows that there is no basis for such changes; in so far as the motion seeks to have additional matter inserted in the finding, it is matter properly omitted or not material to the sufficient presentation of the claims of law made by the plaintiff.

This is an action to recover damages for the alleged failure of the defendant to properly care for a carload of perishable goods, to wit, grapes, during its transportation over its lines as terminal carrier in an interstate shipment. The rights and liabilities of the parties in such a shipment depend upon Acts of Congress, notably the Carmack Amendment, the bill of lading, and the common-law rules as accepted and applied in Federal tribunals. *New England Fruit & Produce Co.* v. *Hines,* 97 Conn. 225, 116 Atl. 243.

The shipper in his complaint alleges and has proved the delivery in good order to an initial carrier at Curry, California, on September 10th, 1920, of a carload of grapes for transportation to Stamford, Connecticut, and that the defendant terminal carrier tendered the car of grapes in Stamford on September 30th, in a decayed and spoiled condition. The complaint alleges as

a basis of liability on the part of the defendant the following defaults: (1) a failure to keep the car properly ventilated and cooled; (2) a failure to provide a sufficient amount of ice; (3) a failure to deliver the shipment within a reasonable time; and (4) negligence in not using the proper and usual methods of safeguarding such a shipment.

The plaintiff alleges, as reasons of appeal, substantially the following: The conclusion of the court from the subordinate facts, that the defendant, terminal carrier, had proved that it was free from negligence in the care of the car of grapes in transit over its line, was not justified under the finding, first, because the contract between the shipper and the initial carrier to protect the grapes by ventilation only, did not excuse the defendant, terminal carrier, from employing refrigeration on its line; second, because it did not ice the car, a common-law duty, while in transit; and third, because the defendant failed to rebut the presumption that the injury to the grapes occurred on its line.

We will first consider what effect the contract in the bill of lading, as to the care of the shipment by the ventilation process, had as to the duty of the terminal carrier. The finding discloses that the shipper and the initial carrier contracted, as appears in the bill of lading, that the grapes should be transported in a "dry car," not to be iced in transit, the vents of the car to be kept open to destination, that is, that the grapes should be protected by the ventilation process. It is found that the car was loaded by the consignor, The California Grape Distributors, agents of the plaintiff, and that the car was of the refrigerator type, with doors on the side which opened outward of such a design that they would have to be closed during transportation. In the roof of the car were openings known as "vents and plugs," and in the floor others known as "drips." When the

contents of the car were to be protected by refrigeration, ice would be placed in the bunkers of the car through the vents and plugs, and these would then be closed, and the drips would be left open. When the contents of the car were to be protected by ventilation, the vents, plugs and drips were all left open. This equipment of the car provided only two methods of protecting a shipment of perishable goods by cooling it: (1) by the refrigeration process, or (2) by the ventilation process. These two methods were necessarily alternative.

The bill of lading, which is required to be issued by the initial carrier upon an interstate shipment, governs the entire transportation and fixes the obligations of all participating carriers to the extent that its terms are applicable and valid. *Georgia, Fla. & Ala. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 36 Sup. Ct. 541; *Oregon-W. R. & N. Co.* v. *McGinn*, 258 U. S. 409, 42 Sup. Ct. 332. "Under the Carmack Amendment the several carriers must be treated, not as independent contracting parties, but as one system; and the connecting lines become in effect mere agents whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier, and they are prevented by law from varying the terms of that contract." *Texas & Pac. Ry. Co.* v. *Leatherwood*, 250 U. S. 478, 480, 39 Sup. Ct. 517. The defendant was a terminal carrier, over whose line the car was transported for a period of considerably less than thirteen hours at the end of a journey lasting from September 10th until September 30th. The court further found, in effect, that the defendant had proved there was nothing in the condition or circumstances of the car during transportation on the defendant's line that would authorize it to alter the method of protecting the grapes provided for in the bill of lading, and that the contractual obligation resting on the defendant under the bill of lading

as to protecting the shipment by ventilation was to keep the car dry without ice, with the vents open to destination. The court found that the defendant had performed this duty.

Under the above contractual duty as to ventilation, the defendant was required not to ice the car, or otherwise interfere with the method of protecting the grapes by ventilation contracted for. The allegations of negligence in failing to ice the car and in failing to use some method of ventilation other than that provided for in the bill of lading, was in effect an allegation that the defendant's compliance with the duties imposed by the bill of lading constituted negligence. Underlying the plaintiff's claim as to the defendant's negligence, is the claimed legal principle that although the initial carrier and shipper have contracted as to the method of protecting perishable fruit whether by refrigeration or ventilation, yet the common law imposes on a carrier the duty of observing the fruit and discovering whether the method of protecting the shipment chosen by the shipper and contracted for is in fact effective, and if found ineffective, then the carrier is negligent if it does not employ some other more effective method. In *Atchison, Topeka & Santa Fe Ry. Co.* v. *United States*, 232 U. S. 199, 215, 34 Sup. Ct. 291, the United States Supreme Court, in an appeal from a Commerce Court ruling, spoke as follows in regard to the duty of a California carrier engaged in interstate shipments of fruit to furnish refrigeration including ice, as a part of transportation in such interstate shipments under the rulings of the Interstate Commerce Commission: "But of course this does not mean, that because the carriers have ice on hand, they can compel the shipper to have his fruit refrigerated, when, on account of the state of the weather or for other cause, he prefers to have it forwarded under ventilation only." This implies, what

common sense indicates, that the shipper may make a valid contract for refrigeration or for ventilation to protect his fruit in interstate transportation, and that this contract fixes the obligation of the connecting and terminal carriers. *Texas & Pac. Ry. Co.* v. *Leatherwood, supra; 2* Hutchinson on Carriers (3d Ed.) § 505.

Under the law stated above, that the bill of lading issued by the initial carrier in an interstate shipment governs the entire transportation and fixes the obligations of all participating carriers to the extent of its valid terms, and under the finding which made ventilation the method of protecting the fruit contracted for in this shipment, any connecting carrier could not legally change even by agreeement the method of cooling the car en route, from the ventilation contracted for to refrigeration by icing. *Texas & Pac. Ry. Co.* v. *Leatherwood, supra.* Therefore, a connecting or terminal carrier, handling a shipment of perishable fruit, under ordinary circumstances, has no duty to examine the fruit to see whether the method of protecting it, whether by refrigeration or ventilation, chosen by the shipper and contracted for, is proving effective, with a view to changing the method contracted for if it reasonably deemed that substituting another method would be more effective.

This shipment was made in September, when cool weather generally prevails. The state of the weather during transportation is not found. The consignor took advantage of the choice, which was his, and contracted for transportation in a dry car without ice, relying upon ventilation to protect the fruit. A shipper cannot make that choice and then insist that the carriers must assume the peril of any loss that comes to the fruit in transit in the way contracted for, if it develops on delivery of the grapes that ventilation failed to keep the grapes from decay when refrigeration might

have done so. Transporting the fruit in the way contracted for cannot constitute negligence and impose on the carriers liability arising from the inherent tendency of fruit to ripen or decay.

A connecting or terminal carrier must observe and obey the contract set forth in the bill of lading unless, possibly, some unusual occurrence not within the reasonable contemplation of the contracting parties has made the condition of the car (not the fruit) such that the method of protecting the fruit contracted for is impossible to follow or unreasonable to attempt to follow. The defendant proved that the car in question was not in any such condition when received by it, or during its transportation. The circumstances attending the defendant's transportation of this car, as found, disclose that there was nothing in its condition that would have justified the defendant in failing to observe the requirements of the bill of lading. Under the facts found the court was justified in its conclusion that the defendant had disproved the negligence alleged in the first, second, and fourth grounds of default as set forth at the outset.

As to the remaining ground of default alleged in the complaint, to wit, that the defendant failed to deliver the shipment within a reasonable time, the court properly found that it was not established, and the plaintiff did not appeal from this ruling.

The appeal also attacks the finding of the court, as a conclusion from the subordinate facts, that the defendant terminal carrier had rebutted the presumption that the injury to the grapes occurred on its line. The plaintiff claims that this conclusion was not justified. The grapes were in good order when shipped in California, September 10th, and we must apply to this perishable fruit the common-law presumption against the last carrier, to the effect that the terminal carrier is pre-

sumed to have received the grapes in good order, and
their injury is presumed to have occurred while in its
control.   These are presumptions of fact and are rebut-
table; they are, however, sufficient to cast on the ter-
minal carrier the burden of going forward with the evi-
dence to disprove them.   Thayer, Preliminary Treatise
on Evidence, p. 314.   Under the subordinate facts
found, to wit, the nature of the shipment (grapes with
an inherent tendency to ripen and decay); the con-
dition of the car when received by the defendant; the
long period of time in transportation over other lines
before the car arrived at Danbury; the few hours the
car was in transportation over the defendant's line; the
extent of the decay of the grapes when the car was
opened at Stamford on September 30th,—the court
held, in effect, that the only inference that could reason-
ably, logically and therefore legally be drawn from the
subordinate facts, was that the grapes were not in good
order when received at Danbury by the defendant, and
that the decay of the grapes did not occur during its
short control of the car, and therefore that the defend-
ant had rebutted the presumption against the terminal
carrier.   In cases of shipments of certain goods, this
presumption against the terminal carrier creates a prima
facie case against it at common law.   In the ordinary
shipment of inanimate objects without an inherent vice,
in the absence of a contract to the contrary, the carrier
is an insurer except as to injuries by the act of God or
the public eneimes, and responsible for any injury to
such objects occurring on its line except as above,
without regard to whether or not it was negligent.
*Mears* v. *New York, N. H. & H. R. Co.*, 75 Conn. 171,
174, 52 Atl. 610.   So that if an injury occurs to such
a shipment, or there is an unrebutted presumption of
an injury to it, not by the act of God or the public
enemy, on the line of any carrier, the carrier's liability

as an insurer entitles the shipper to recover for the injury against it. The common-law liability of a carrier as an insurer does not extend to certain classes of articles shipped. As to livestock, fruit, vegetables or articles with an inherent vice, the implied obligation of the carrier, as insurer, does not extend. *Coupland* v. *Housatonic R. Co.*, 61 Conn. 531, 539, 540, 23 Atl. 870; *Evans* v. *Fitchburg R. Co.*, 111 Mass. 142; *Hussey* v. *The Saragossa*, 3 Woods Reports (U. S. C. C.) 380; Moore on Carriers, Vol. 1, p. 31, § 3 and note 26; Elliott on Railroads (3d Ed.) Vol. 4, § 2276; *Adams Express Co.* v. *Scott*, Amer. & Eng. Ann. Cas. 1913D, note on p. 974 (113 Va. 1, 73 S. E. 450). In the note to *Adams Express Co.* v. *Scott, supra*, the annotator says that contracts "limiting the liability of a carrier for injuries resulting to animals from their own natural propensities, . . . are valid although unnecessary," because under existing law the carrier is not liable to the shipper for injuries resulting to animals from their own propensities or inherent vice, unless such propensities are aroused by some negligent act of the carrier which contributes to or is the proximate cause of the loss.

The bill of lading approved by the Interstate Commerce Commission, under which this shipment was made, provides as follows as to the burden of proof: "Except in case of negligence of the carrier or party in possession (and the burden to prove freedom of such negligence shall be on the carrier or the party in possession), the carrier or party in possession shall not be liable for loss or damage . . . resulting from a defect or vice in the property." Therefore, where the shipper alleges that fruit is damaged in that it has decayed, a damage which results from an inherent vice of the property, and specifies the defaults either *ex contractu* or *ex delicto* of the carrier which it claims caused the decay, a bill of lading providing as this bill does as to the bur-

den of proof, changes the common-law rule which placed the burden of proof on the shipper as to allegations of the default of the carrier whether *ex contractu* or *ex delicto,* and puts the burden on the carrier to prove freedom from any negligence alleged, and the allegations of negligence raise a prima facie case against the carrier.

As stated, the reasons of appeal allege, in effect, that the trial court erred in drawing certain conclusions from the subordinate facts found, because not justified by the finding.  For the reasons set forth above these reasons of appeal are not well taken.

There is no error.

In this opinion the other judges concurred.