## Denney & Company, Defendant in Error, v. Wabash Railway Company, Plaintiff in Error.

### Gen. No. 32,592.

Opinion filed November 19, 1928. Rehearing denied December 3, 1928.

JOHN GIBSON HALE, for plaintiff in error.

O'CONNELL, McGLINN & O'GALLAGHER, for defendant in error; DANIEL O'CONNELL and LEO N. McGLINN, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

By this writ of error the railway company, a common carrier, defendant in the trial court, seeks to reverse a judgment for the plaintiff in the sum of $292.62, entered upon the finding of the court.

The facts in the case are practically uncontradicted and are in the record by stipulation of the parties. The plaintiff is the holder of a bill of lading, which

covers a shipment of 742 bushels of yellow turnips in bulk, weighing 37,100 pounds. The shipment was in good condition and free from frost when delivered to and accepted by the initial carrier (the Canadian Pacific Railway Company) at Moffatt, Ontario, Canada, on January 10, 1925, for transportation to Chicago, Illinois. The shipment was routed via Detroit, Michigan, and Wabash Railway Company from Detroit to Chicago, arrived at Chicago on Wabash Railway Company at 2:20 a. m., January 15, 1925, and was placed for unloading at 7 o'clock a. m. the same day.

The shipment was inspected on the day of its arrival by inspectors for plaintiff and defendant and found to be in a frozen condition by which the commodity was damaged to the amount of the judgment.

The car was transported on schedule with the ventilators closed, plugs in and drain pipes plugged throughout the transit. The defendant received the car at Detroit and delivered it to Chicago under the same seals. The car was not wrecked, roughly handled or opened until after notice of arrival at Chicago was given and was not interfered with at Chicago or handled in any way, or the commodity moved or otherwise so as to cause damage unless from failure to heat the car.

The defendant has never provided for heater service in its tariff and has never rendered such service to such shipments. Heater service in the United States has never been provided for by the railroads in their tariffs or actually rendered except upon shipments originating at or destined to points west of the Missouri River, and where such service is provided the tariffs require that written request of the shippers for such service be indorsed on the bill of lading.

The inspection report, which is in evidence by agreement, shows that the seals were broken on the cars in Chicago on January 15, 1925; that the hatches, plugs

and drain pipes were closed; that there was no ice or heater; that the temperature outside was 25 degrees, at the top of the car 34 degrees, and at the bottom of the car 32 degrees; that the weather was clear; that the condition of the car was good; that the car was equipped with false floors; that the turnips were of fair grade and mature and that there was practically no decay; that the same were of good quality and in good condition with the exception that one layer of the turnips on the floor between doors was frozen solid with ice; that there was straw on the false floor and up the side at the doorways, and there were also burlap bags packed for protection from freezing and the doorway was boarded up 4 feet high.

The bill of lading issued by the Canadian Pacific Railway at Moffatt, Ontario, provided, "inspection allowed, heater service not required, OK of deterioration account frost, not perishable, standard ventilation."

It also provided that the carrier should not be liable for loss, damage or delay to any of the goods described caused by the act of God, the King's or public enemies, riots, strikes, defect or inherent vice in the goods or the act or default of the shipper or owner; that goods not removed by the party entitled to receive them within 48 hours, or if bonded goods within 72 hours, after written notice had been sent or given, might be kept in car, station or place of delivery or warehouse of the carrier, subject to a reasonable charge for storage and to the carrier's responsibility as warehouseman only.

At the time this shipment was made, the tariff of the defendant railway company, filed with the Interstate Commerce Commission covering shipments between Moffatt, Ontario, and Chicago, Illinois, contained no rate of tariff or charge to be exacted by railroads for heater service or service against frost upon shipments moving between these points. The consolidated

freight classification filed with the Interstate Commerce Commission at Washington, which was effective at the time of this shipment, contained certain provisions respecting heaters or protection against frost or cold, and these rules provided that ratings for freight in carloads should not obligate the carriers to furnish heated cars nor to maintain heat in the cars for freight requiring such protection, except under conditions which the carrier's tariff would provide; that stoves used in cars, and the fittings and fuel therefor, must be furnished by the shippers and that the shippers must provide for men to care for the fires.

Propositions of law were submitted by the parties. The court held that a common carrier was obligated to protect a perishable shipment in its possession against frost or freezing by the best method proven to science consistent with the carrier's employment and to so protect it independent of an express agreement to do so; that there was a duty imposed upon a carrier to publish a schedule covering charges for heating a car or protecting it against cold, and that the failure of the carrier to publish such a schedule did not relieve the carrier of its duty to protect goods of a perishable nature in its possession as a common carrier, and apparently upon such theory, the court held the defendant liable.

We think the court erred in so holding and that these propositions of law are not applicable to the facts which appear in this record. We have so held recently in the case of *Northwestern Fruit Exchange v. Erie R. Co.,* 248 Ill. App. 193, following the case of *W. H. Blodget Co. v. New York Cent. R. Co.,* — Mass. —, 159 N. E. 45.

Plaintiff says that decisions of the Interstate Commerce Commission in *Memphis Freight Bureau v. Kansas City Southern,* 17 I. C. C. 90; *Galeway Produce Co. v. American Ry. Express Co.,* 61 I. C. C. 347; and *Mitoue & Co. v. Director General,* 81 I. C. C. 489, were

not called to our attention in that case, and that if this had been done the decision would have been otherwise. We have examined these decisions, but do not regard them as at all controlling. In those cases the commission held in effect that where no tariff rate for refrigeration had been filed but where the carrier had made a charge for the same which the shipper had paid, the commission could review this charge as to its reasonableness.

Plaintiff also cites *Chicago & N. W. Ry. Co. v. C. C. Whitnack Produce Co.*, 258 U. S. 369; *Freedman v. Erie R. Co.*, 246 Ill. App. 479; *Lino v. Northwestern Pac. R. Co.*, 246 Ill. App. 451, to the point that where goods are delivered to the initial carrier in good condition and are delivered by the delivering carrier in a damaged condition at the destination, the delivering carrier is presumed to have caused the damage. This proposition, however, being conceded, is not controlling here. The stipulation of the parties is to the effect that defendant performed all its duties except to furnish heat. Defendant was not obligated to furnish heat, and there is therefore no liability.

The defendant in error heretofore made a motion to dismiss this writ for the reason that the record discloses that an appeal had been prayed by plaintiff and allowed and a bond filed, and it was urged that this writ might not be prosecuted in this court while the appeal was undisposed of. The motion was denied but is again reargued in the briefs. We adhere to our former decision.

For the reasons indicated the judgment of the trial court will be reversed.

*Reversed.*

O'Connor, P. J., and McSurely, J., concur.