Howard S. Palmer et al., Trustees of New York, New Haven and Hartford Railroad Company, Appellants, v. Lorenzo Gillarde et al., Appellees.

Gen. No. 41,752.

Heard in the first division of this court for the first district at the June term, 1941. Opinion filed December 22, 1941. Rehearing denied January 5, 1942.

HAY, MORTON & FREYTAG, of Chicago, for appellants; HERMAN T. VAN MELL, of Chicago, of counsel.

BLANKSTEN & LANSING, of Chicago, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

July 20, 1935, the New York, New Haven & Hartford Railroad Company, a corporation, brought an action against defendants to recover $496.58, the charges for transporting a carload of lettuce from Watsonville, California to Boston, Massachusetts. When the car reached Boston the purchaser refused to accept the lettuce and it was afterward sold by the railroad company for $60.32. The railroad gave credit for this amount leaving $436.26. Interest was claimed on this sum from the date the lettuce was shipped, July 6, 1932. Defendants filed an affidavit of defense and recoupment denying liability and claiming $554.72 as the loss sustained by them on account of the claimed negligence of plaintiff in transporting the car of lettuce. July 21, 1936, a year after the suit was brought, by stipulation

of the parties, all pleadings were stricken and leave given plaintiff to file an amended statement of claim. Thereafter numerous other pleadings were filed by both parties. Defendants interposed a number of defenses and again alleged plaintiffs were indebted to defendants for $554.72 the loss claimed to have resulted from plaintiffs' negligence. October 9, 1940, the case went to trial and at that time leave was given defendants to increase the amount of their counterclaim to $1,000, and the three trustees of the plaintiff railroad company were substituted as plaintiffs. The counterclaim was tried by a jury of 6 and a verdict returned for $700. Plaintiffs' claim was then tried before the court without a jury. The court found in favor of plaintiffs for the amount of their claim, viz., $436.26 and allowed $122.08 to plaintiffs for the cost of taking depositions. Judgment was entered for these two amounts or $558.34, and judgment was entered on the verdict for $700 in defendants' favor and against plaintiffs. Plaintiffs prosecute this appeal.

The record discloses that July 6, 1932, the Southern Pacific Railroad Company received from Travers & Sakata at Watsonville, California, a carload of lettuce consigned to defendants at Chicago for which the railroad company issued its uniform, straight bill of lading. July 13, the car arrived in Chicago and was rerouted July 14, to Newark, New Jersey, where it arrived July 16, 1932. July 21 the car was ordered from Newark to Boston, Massachusetts, where it arrived July 23, 1932, where the purchaser refused to accept the lettuce because of its damaged condition and it was sold by the railroad company, as stated, for $60.32.

On the trial it was stipulated that if defendant, Lorenzo Gillarde, were called, he would testify that after the arrival of the car in Chicago the lettuce had been sold to the American Stores, Inc., of Philadelphia, Pennsylvania, for $1,040, and the evidence further

shows that the car was sent to Newark, N. J., to the American Stores, Inc., and there refused because of the damaged condition of the lettuce.

Plaintiffs contend the judgment is wrong and should be reversed because plaintiffs were entitled (1) to interest on the amount of the transportation charges from the date delivery of the lettuce was tendered, (2) plaintiffs were also entitled to attorney's fees to be taxed as costs for the reason that defendants filed false pleadings setting up matters which they knew to be untrue as a result of which plaintiffs' counsel was put to a great deal of unnecessary work, and that such attorney's fees should be taxed against defendants, (3) that the trial court had no jurisdiction of the subject of the counterclaim; and (4) that plaintiffs transported the lettuce without negligence and therefore were not liable to defendants on account of any damage and the judgment of $700 should be reversed.

(1) Plaintiffs' claim is that they are entitled to interest at the rate of 5 per cent per annum on the amount of the transportation charges by virtue of § 2, chapter 74, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 67.02], which provides that creditors shall be allowed to receive interest at the rate of 5 per cent per annum for all moneys after they become due on any bond, bill, promissory note or other instrument of writing. And counsel say that the freight charges are determined by the lawful published freight tariffs on file with the Interstate Commerce Commission and therefore the court erred in not awarding interest on the amount remaining due plaintiffs. We think there is no merit in this contention. While the transportation charges have not been questioned, yet we are of opinion defendants' counterclaim was properly filed and it would be only the excess, if any, of plaintiffs' claim which would draw interest. In the instant case, the counterclaim being more than plaintiffs' claim

for transportation it follows that plaintiffs could recover no interest.

(2) As to the question of the allowance of attorney's fees. We think there is some merit in this contention. Defendants filed numerous defenses where they alleged they did not own the lettuce and in the next paragraph that they did. The suit was not filed until several years after the lettuce was shipped and obviously defendants knew whether they owned the lettuce or not and they cannot be excused on the ground urged that they had a right to plead alternative defense. This is only allowable when such matters are pleaded in good faith but we think that is not the fact in the instant case. On the other hand, plaintiffs filed a statement of claim and after defendants filed a recoupment or counterclaim an order was entered by stipulation striking the statement of claim and the affidavit of defense and recoupment. July 21, 1936, a year after the suit was brought, plaintiffs filed an amended statement of claim. An affidavit of defense was filed by defendants to this and later an amended defense and an amended counterclaim. An order was afterward entered sustaining plaintiffs' motion to strike defendants' affidavit of merits and counterclaim from the files. Defendants then filed a second amended defense to the second amended counterclaim. Plaintiffs answered the second amended counterclaim. Afterward defendants filed a third amended defense and an order was entered allowing plaintiffs to reply which they did April 12, 1937. We are unable to understand why it was necessary to file such pleadings and no explanation has been made. The issues involved should have been simply and easily stated without encumbering and confusing the record.

Upon a consideration of the entire record, we are unable to say that the trial court erred in refusing to allow plaintiffs' attorney's fees.

(3) Counsel for plaintiffs contend the court had no jurisdiction of the counterclaim because claims for damages to interstate shipments are governed exclusively by the Interstate Commerce Commission Act and more particularly by ''Section 20 (11) thereof,'' 49 U. S. C. A., sec. 20, par. 11.

That section provides: ''Any . . . railroad . . . receiving property for transportation from a point in one State . . . to a point in another State . . . shall be liable to the lawful holder (of the bill of lading) for any loss, damage or injury to such property caused by it or by any . . . railroad to which such property may be delivered or over whose line or lines such property may pass . . . and any . . . railroad so receiving property for transportation . . . or . . . delivering said property so received and transported shall be liable . . . for the full actual loss, damage, or injury to such property caused by it or by any such . . . railroad . . . to which such property may be delivered. . . . *Provided further,* That all actions brought under and by virtue of this paragraph against the delivering carrier shall be brought, and may be maintained, if in a district court of the United States, only in a district, and if in a State court, only in a State through or into which the defendant carrier operates a line of railroad.'' And the argument is that the plaintiff, the New York, New Haven & Hartford Railroad did not operate a line in Illinois and therefore the municipal court of Chicago had no jurisdiction. We think this contention cannot be sustained. If defendants had brought an original action in Chicago, obviously the section would apply and the court would have no jurisdiction but that is not the case before us. In the instant case, the New York, New Haven & Hartford Railroad brought its suit in the municipal court of Chicago and obviously defendants had the right to interpose any defense, including a counterclaim or set-off. § 38, par. 162, ch. 110, Ill.

Rev. Stat. 1941 [Jones Ill. Stats. Ann. 104.038]. The court had jurisdiction of the counterclaim.

But counsel further contend that in no event can a counterclaim be interposed where plaintiffs bring suit to recover the transportation charges and in support of this cite *New York, New Haven & Hartford R. Co. v. California Fruit Growers' Exchange,* 125 Conn. 241, 5 A. (2d) 353. And counsel say: "the Act [Transportation Act] provides that *the debt for freight charges* is irrevocably fixed by the lawful tariffs applied to the bill of lading and the services rendered, and *becomes due and payable immediately at the termination of the transit.* The freight charges cannot be diminished or 'defeated' and may not be varied by reason of any damage liability which may exist against the carrier; freight charges, the money due carriers for transportation, are not dependent upon future litigation of and balancing out of damage claims. Congress has provided a separate and distinct method for the handling of such claims in Section 20 (11)."

The Connecticut case cited does not sustain counsel's contention. In that case an action was brought by the railroad to recover freight and refrigeration charges upon a carload of oranges. Upon arrival of the shipment at destination the defendant directed plaintiff railroad company to deliver the shipment to Shore Bros., Inc., "on payment of freight and all other charges." The shipment was delivered but the charges were not collected. Afterward Shore Brothers discontinued business and suit was brought against the consignor of the oranges. Defendant pleaded by way of recoupment that plaintiff failed to comply with the delivery order in that it delivered the oranges without collecting the freight and other charges, and contended that it was entitled to recoup the amount of the charges "in diminution and extinction of plaintiff's claim." The court held this could not be done. In the opinion the court cited the case of *Chicago &*

*N. W. Ry. Co. v. Lindell,* 281 U. S. 14, and in speaking of that case said "We think that case is not applicable to the issue here presented which involves nothing more than the right of the carrier to collect the full amount of its charge for the shipment; whereas in the case last above cited the shipper had an independent claim against the carrier for damage of goods in transit." In the *Lindell* case it appeared that Lindell had delivered grapes to the railroad in California for transportation to Chicago. The grapes were transported and delivered to the consignee in Chicago without collecting freight and other charges. Following these facts the court said: "Because of unreasonable delay on the part of appellant and its failure to use reasonable care to keep the car properly iced, the grapes were delivered in a damaged condition. Appellant sued in the United States District Court . . . to recover such charges. And appellee by answer set up the loss." The court allowed the loss and the question was certified to the Supreme Court of the United States where the court said the decisions on the question involved had been conflicting and refers to such cases in the foot-note. The judgment of the court was affirmed. The court there said (17) "The adjustment of defendant's demand by counterclaim in plaintiff's action rather than by independent suit is favored and encouraged by the law. That practice serves to avoid circuity of action, inconvenience, expense, consumption of the courts' time, and injustice." The court then cites *Partridge v. Ins. Co.,* 15 Wall. 573, and said: "In the case last mentioned the Court, speaking through Mr. Justice Miller, said (p. 580) : 'It would be a most pernicious doctrine to allow a citizen of a distant State to institute in these courts a suit against a citizen of the State where the court is held and escape the liability which the laws of the State have attached to all plaintiffs of allowing just and legal set-offs and counterclaims to be interposed and tried in the same suit and in the same form.'

"The practice of determining claims of shippers for loss or damage in suits brought by carriers to collect transportation charges is not repugnant to the rule prohibiting the payment of such charges otherwise than in money." That case is directly in point and contrary to plaintiffs' contention. (See also *Mich. Cent. R. Co. v. McKenna*, 236 Ill. App. 575.)

(4) Was the railroad company negligent? At plaintiffs' request the following question was submitted to the jury: "Was the lettuce in good, sound condition at the time it was shipped from Watsonville, California?" Which the jury answered, "Yes." The evidence shows that when the car arrived at Newark the lettuce was in a damaged state and the purchaser rejected it. Plaintiffs say there was no evidence tending to show that the damaged condition of the lettuce was brought about through any act of the transportation companies and therefore the court should have sustained plaintiffs' motion for a directed verdict at the close of all the evidence. Plaintiffs further contend the court erred in admitting a document prepared by the Southern Pacific Railroad Co. which showed the mechanism of the plug, hatch cover and hatchway and how the closing of the plug, etc., might be improper, as a result of which hot air would get into the car and cause the damage complained of. In view of the way the case was tried, we think there was no error in this respect. The record discloses that objection was made by counsel for plaintiffs to the admission of this exhibit and after considerable argument between court and counsel and after questions were asked the witness, counsel for plaintiffs said: "Well, I will consent to it being admitted in evidence," and thereupon it was so admitted. We think the court did not err afterwards in refusing to strike the exhibit as counsel for plaintiffs requested.

There was evidence that the lettuce was affected by tipburn when it was taken from the field to the car and further evidence to the effect that this brought

about the damage to the lettuce and that the damage was not through any fault of the transporting companies.

On the other side a witness called by defendants testified he had been inspecting cases of perishable fruits for many years; that "I have testified as an expert before over a period of 31 years." He gave as his opinion that warm air from the outside must have got into the car because the hatch covers were not closed and the plugs were not in place. He testified, "I am satisfied that there must have been some outside air that came into the car and burned up the ice. . . . The decay in this case was from outside air." This witness further testified that if the hatch covers were properly closed and the plugs in, the lettuce would have been properly preserved. "I would say the disappearance of top ice was the primary cause for the decay discovered in this shipment at Newark. . . . The admission of outside air is the very thing which caused that [decay]." This witness did not see the lettuce but testified only from the certificates made by inspectors who examined it.

Upon a careful consideration of all the evidence, we are unable to say the finding of the jury in favor of the defendants on their counterclaim is against the manifest weight of the evidence.

Complaint is also made that the court erred in refusing to give plaintiffs' requested instructions numbers 11, 12, 13, 14, 15 and 16.

Instruction 11 was to the effect that plaintiffs were liable only for their own negligence. This offered instruction was properly refused because under the statute plaintiff, as delivering carrier, was liable for the negligence, if any, of the other railroads.

Instruction 12 was subject to the same criticism because it sought to tell the jury that if they found "plaintiff guilty of conduct" which contributed to

cause the damages and the damages were caused in part by the nature and tendency to the decay of the lettuce the damages assessed should be diminished, etc. This instruction might mislead the jury because plaintiff would be liable even though it were guilty of no negligence because it could be held for the negligence of the other railroad companies for any damage.

Plaintiffs' offered instruction 13 defined the measure of damages to be the difference between the fair cash market value of the lettuce in its damaged condition and the fair cash market value if it had been delivered in good condition. It was stipulated that defendants had sold the lettuce in Newark for $1,040 and we think this figure should be used as a basis for fixing the damages.

By plaintiffs' offered instruction 14 it was sought to tell the jury that if they found "that the evidence on both sides is evenly balanced as to whether the lettuce was in good sound condition at the time of shipment so that they were unable to say on which side is the preponderance, or if the preponderance of the evidence is in favor of the railroad, then, in any of these cases, the jury's verdict should be for the railroad." We think defendants were required to prove the lettuce was in good condition when delivered to the railroad in California, and when they proved it was in damaged condition when it arrived at Newark, this made a *prima facie* case. *Freedman v. Erie R. Co.*, 246 Ill. App. 479; *Railway Express Agency, Inc. v. H. Rouw Co.*, 197 Ark. 1142, 128 S. W. (2d) 989. The United States Government inspection certificate at Watsonville, Calif., was admitted in evidence and showed the lettuce was in good condition at that point. The burden then of going forward with evidence was on the railroad to show that the damage was not the result of negligence on its part. Even if the lettuce

was not perfect when it was put in the car at California, this would not relieve the carrier from any damage that resulted from its negligence. We think it was not reversibly erroneous to refuse the instruction.

Refused instruction 15 was as follows: "Once a condition is shown to exist it is presumed that such condition continues to exist unless there is evidence to the contrary." This was abstract in form and it is never prejudicial error to refuse such an instruction. We think it clear this offered instruction would be of no assistance to the jury.

By offered instruction 16 it was sought to tell the jury that "Evidence as to what has happened in certain other instances does not prove one way or the other that the particular situation has or has not occurred here. The fact that plugs can be inserted wrongly is no evidence that they were or were not inserted wrongly in this case." We think this instruction was apt to be misleading. As above stated, a witness testified that in his opinion warm air from the outside got in through the plugs which caused the ice to melt with resulting damages. We think the instruction was properly refused.

A further point is made that the verdict is inconsistent with the evidence and that it is excessive. In support of this counsel for plaintiffs say "The verdict of $700 is inconsistent with both the net market value ($580) or the contract price ($1,040). On a market value theory it is grossly excessive, for even if the decay arose from carrier negligence and not from tipburn, 40% of the shipment was unmerchantable because of tipburn and the only consistent verdict would have been $580 less 40% or $380." Whether the damage was caused by tipburn or by the negligent handling of the refrigeration equipment, we think it was for the jury. Defendants' proof was to the effect

that they had lost $1,040 and although the jury only awarded them $700 we think plaintiffs are not in a position to complain.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.